443 P.2d 1013

**AMERICAN MACHINE COMPANY,**
**Plaintiff-Appellant,**

v.

**Jerry FITZPATRICK, dba Fitzpatrick Mechanical Repair, Defendant-Respondent.**

**No. 10089.**

Supreme Court of Idaho.

July 10, 1968.

Hamilton & Hamilton, Coeur d'Alene, for plaintiff-appellant.

Sterling Williver, Sandpoint, for defendant-respondent.

McQUADE, Justice.

At all pertinent times, appellant, a machine company, owned a certain used TLDT ("log jammer") motor vehicle, serial number 3254 and a straight boom used in connection with the vehicle. Sometime before November 1964, appellant permitted a potential customer, Reuben W. Akre, to try out "in the field" the vehicle and its attached straight boom. How long Akre kept such possession is not shown by the record. During this try-out period, appellant did not file of record any documents evidencing its legal interest in the vehicle.

Sometime during November 1964, at the request of Akre or his foreman, respondent performed work on the vehicle and/or on its attached lift straight boom.[1] For purposes of our decision, it makes no difference whether respondent worked on the vehicle itself or on its attached boom; for convenience, we accept respondent's answer to an interrogatory stating that the work was performed on the vehicle itself. There is no controversy concerning the reasonable value of the repairs, which the district court found to be $220.-94.

Apparently, respondent did not inquire concerning Akre's legal interest in the vehicle. By interrogatory, appellant asked respondent when and how Reuben Akre had "represent[ed] himself to be the owner"? Respondent answered: "he didn't say one way or another; he more or less acted like it was his machine. Stephen Mc-

items to it) at a cost of $25.00, and that later, November 10, 1964, the vehicle was brought to respondent's shop by Akre's foreman (Stephen McNearney) where respondent worked on the *vehicle itself*—tuning its motor, steam cleaning its whole inside, changing its air controls and gauges—and removed the straight boom.

Nearney, his foreman, brought it to me to have work done on it." Appellant was not notified of the work before its completion.

Upon completion of the work, respondent released the vehicle to Akre, keeping as "collateral" the boom which it had detached from the vehicle. Shortly thereafter, Akre returned the vehicle (without the boom) to appellant. Akre did not pay respondent for the work and soon afterwards, Akre filed a petition in bankruptcy and was adjudicated a bankrupt. Respondent filed no claim against Akre's bankruptcy estate but Akre did list respondent as a debtor for the amount of the repair bill.

In this action by appellant for claim and delivery of the boom retained by respondent, respondent counterclaimed for the repair charges. The district court granted summary judgment on the counterclaim[2] in respondent's favor for $220.94.[3] In its findings, the court stated that appellant, who at all pertinent times owned the vehicle and equipment, placed the vehicle and equipment in the lawful possession of appellant's potential customer, Akre, and that "while Akre had legal possession he caused the machine to be delivered to the Defendant [respondent] for repairs and alterations," whereupon respondent did repair the vehicle. As a conclusion of law the court determined that I.C. § 45–806 "allows the legal possessor of personal property to create a lien upon that property by contracting for work done on the personal property of the owner." This is an appeal from the summary judgment.

At all times pertinent to this action, I.C. § 45–806 provided:

"45–806. *Lien for making, altering, or repairing personal property.*—Any person, firm or corporation, who makes, alters or repairs any article of personal property, at the request of the owner or person in legal possession thereof, has a lien, which said lien shall be superior and prior to any security interest in the same for his reasonable charges for work done and materials furnished, and may retain possession of the same until the charges are paid. If not paid within two (2) months after the work is done, the person, firm or corporation may proceed to sell the property at public auction, by giving ten (10) days' public notice of the sale by advertising in some newspaper published in the county in which the work was done; or, if there be no newspaper published in the county, then by posting up notices of the sale in three (3) public places in the town where the work was done, for ten (10) days previous to the sale. The proceeds of the sale must be applied to the discharge of the lien and the cost of keeping and selling the property; the remainder, if any, must be paid over to the owner thereof. Provided that the said person, firm or corporation who is about to make, alter or repair the said property, in order to derive the benefits of this section, must, before commencing said making, altering or repairing, give notice of the intention to so make, alter or repair said property, by registered mail, to any holder of a security interest which is of record in the county where said property is located, and, if a motor vehicle, to any holder of a security interest which may appear on the certificate of title of said vehicle, at least three (3) days before commencing said making, altering or repairing and if notice in writing within said three (3) days be not given by such holder of a security interest notifying said firm or corporation not to perform said services then the said making, altering or re-

2. In the claim and delivery action, at appellant's order the sheriff seized the boom and delivered it to appellant. The points involved in the claim and delivery action are not directly in issue on this appeal.

3. Appellant had asked for $245.49 in its cross-complaint, but the reason for the discrepancy in amounts does not appear and the judgment is not questioned in this respect.

pairing may proceed and the prior lien provided for herein attaches to said property." [4]

Appellant relies on the proviso of I.C. § 45–806, contending that if the repairer of a motor vehicle to preserve his lien rights must give notice of intended repairs to the holder of a conditional sale contract or to a chattel mortgage, *a fortiori* one having full ownership rights should be accorded such notice protection.[5] Appellant further contends that if respondent did have a lien on the vehicle respondent lost such lien by voluntarily relinquishing possession of the vehicle.

Appellant also contends that the papers of record show two questions of material fact which would preclude entry of summary judgment. These questions allegedly arise from: (1) the conflict between respondent's cross-complaint and its answers to interrogatories concerning the item of machinery on which work was performed;[6] and, (2) the following answer of respondent to appellant's interrogatory asking how Reuben Akre had represented himself to be the owner: "When I talked to Reuben Akre, he didn't say one way or another; he more or less acted like it was his machine. Stephen McNearney, his foreman, brought it to me to have work done on it."

## QUESTIONS OF FACT

■■ To forestall a summary judgment, factual disputes must concern an issue of material fact.[7] But the questions of fact alleged by appellant are concerned with immaterial problems. Because I.C. § 45–806 speaks to legal possession, whether Akre represented himself as actual owner of the vehicle is beside the point; that he was in legal possession is not challenged. And it is of no consequence on the facts of this case that the repairs may have been on the vehicle itself or on the straight boom, or on both. In fact, under the quoted statute, I.C. § 45–806, appellant's position is stronger if we assume that the repairs were made to "a motor vehicle."

## INTERPRETATION OF I.C. § 45–806

■■■ Notation of lien or encumbrance on a certificate of title is in Idaho the exclusive method for protection of a security interest on a motor vehicle.[8] Insofar as here pertinent, the lien priority protection of I.C. § 45–806 as against another person whom the certificate of title indicates as holding a pre-existing conditional sale contract or title retaining note [9] depends wholly upon notification to such secured person of the proposed repairs prior to their commencement. As owner of the vehicle, appellant of course did not hold on it a conditional sale contract or title retention note or any other security interest. Thus, appellant is not within the express statutory coverage. But appellant contends that it would be illogical to interpret the statute as refusing protection to an outright owner while protecting one with only con-

---

4. In 1967 the statute was amended by, inter alia, substituting "a security interest" for "conditional sales contract or title retaining note." Idaho Sess.Laws 1967, ch. 272, § 12, pp. 756–757.

5. Appellant states its argument as follows:

"Idaho is a title State and thereby owners of motor vehicles are given protection not afforded to owners of other personal property. If the person repairing or altering a motor vehicle must give notice to a holder of a conditional sales contract or chattel mortgage, which would only appear by an examination of the title, it is obvious that a full ownership right should have, at least, the same protection from someone having

work done without the owner's authorization. A contrary view would mean that if one was trying out a dealer's vehicle or driving a rented automobile, he could have work done in a garage and create a lien if it was free and clear of all liens on the title." (App.Br. 6).

6. See n. 1, supra.

7. Idaho R.Civ.P. 56(c); Jordan v. Pearce, 91 Idaho 687, 429 P.2d 419 (1967).

8. I.C. § 49–414. Such notation must be made in accordance with procedure set forth in I.C. § 49–412.

9. And since the 1967 amendment referred to in n. 4, a holder of any "security interest."

ditional ownership under a security agreement. We do not agree.

 The statute is not unambiguous. Nevertheless, studying it in the present context, we think the correct interpretation is as follows. Upon repairing a motor vehicle at the request of its lawful possessor (Akre or his foreman), a lien for reasonable charges for repair services automatically attaches to the vehicle in favor of the garageman (respondent). However, by the proviso of I.C. § 45–806, such lien is subordinate to the security interest of one holding a conditional sale contract or title retaining note covering the vehicle if such interest is properly noted on the vehicle's certificate of title, unless the garageman prior to commencing repairs has notified such security holder of the intended re-

pairs and has received no negative response within three days. Thus, the garageman has his lien on a motor vehicle whenever he repairs it at the request of its legal possessor; but "in order to derive the benefits of" I.C. § 45–806, namely the priority accorded the garageman's lien above a pre-existing secured interest noted on the certificate of title, the statutory notification must be given. Thus, on the present facts respondent has his lien for reasonable repair charges.

This construction finds support in the statute's history. Until 1935, the statute [10] unconditionally gave a lien on an article of personal property to one who repaired it at the request of its owner; there was no expression regarding the relative priority of such lien. In 1935 the statute was amended [11] by adding the clause making the

10. C.S. § 6413; I.C.A. § 44–706.
"A person who makes, alters or repairs any article of personal property, at the request of the owner, has a lien on the same for his reasonable charges for work done and materials furnished, and may retain possession of the same until the charges are paid. If not paid within two months after the work is done, the person may proceed to sell the property at public auction, by giving 10 days' public notice of the sale by advertising in some newspaper published in the county in which the work was done; or, if there be no newspaper published in the county, then by posting up notices of the sale in three of the most public places in town where the work was done, for 10 days previous to the sale. The proceeds of the sale must be applied to the discharge of the lien and the cost of keeping and selling the property; the remainder, if any, must be paid over to the owner thereof."

11. Idaho Sess.Laws 1935, ch. 87, § 1, pp. 153–154. The amendment made no deletions. Added language is indicated by italics.
"Section 44–706. LIEN FOR MAKING, ALTERING, OR REPAIRING PERSONAL PROPERTY. *Any* person, *firm or corporation* who makes, alters or repairs any article of personal property, at the request of the owner *or person in legal possession thereof*, has a lien, *which said lien shall be superior and prior to any mortgage of title re-*

*taining note or conditional sales contract* on the same for his reasonable charges for work done and materials furnished, and may retain possession of the same until the charges are paid. If not paid within two months after the work is done, the person, *firm or corporation* may proceed to sell the property at public auction, by giving ten days' public notice of the sale by advertising in some newspaper published in the county in which the work was done; or, if there be no newspaper published in the county, then by posting up notices of the sale in three public places in the town where the work was done, for ten days previous to the sale. The proceeds of the sale must be applied to the discharge of the lien and the cost of keeping and selling the property; the remainder, if any, must be paid over to the owner thereof. *Provided that the said person, firm or corporation who is about to make, alter or repair the said property, in order to derive the benefits of this section, must, before commencing said making, altering or repairing, give notice of the intention to so make alter or repair said property, by registered mail, to any holder of a mortgage lien which mortgage is of record in the county where said property is situated, and, if a motor vehicle, to any holder of a conditional sales contract or title retaining note which may appear on the certificate of title of said vehicle, at least three days before commencing said making, altering or*

lien "superior and prior" to specified pre-existing security interests on the vehicle, and by adding the proviso that "in order to derive the benefits of this section" previous notice of intended repairs had to be given to such security holders. The obvious and reasonable interpretation of this amendment is that the proviso clause merely qualified the priority advantage clause: the lien would have priority provided the notification procedure was satisfied.

■ And, properly analyzed, this result is not illogical. In the present context, appellant's legal interest in the vehicle ownership, is materially different from the security interests expressly protected by I.C. § 45–806. Generally, a security device gives to a creditor a conditional claim against the value of some property ("security") to assure the satisfaction of a separate obligation. The creditor's claim against such security is limited to the amount of the underlying obligation. Upon default in that obligation, the secured creditor will not receive ownership or unfettered possession of the security; rather, the creditor's right is limited to satisfying the obligation out of the proceeds from a sale of the security. The secured creditor is not interested in the security itself; his interest lies in the security's value which represents a potential fund assuring payment of the separate obligation. Rules concerning relative priorities of separate security interests in the same property, as that contained in I.C. § 45–806, establish the rank or order of payment from the fund arising upon creditor's sale of property. A "superior and prior" lienholder must have his lien completely satisfied before subordinate or junior secured interests receive anything

at all from the fund. Thus, making a lien "superior and prior" to a pre-existing security interest may jeopardize the pre-existing security interest.

Because one having a security interest in certain property does not have a right to its ownership and unfettered use, he is not directly enriched by repairs to the property. However, an owner is necessarily enriched by required repairs to his property in that he may demand possession and use of the property. Indeed, in the present action there is no contention that the repairs were not required or the charges for them unreasonable.

Viewed in light of the considerations discussed in the two preceding paragraphs, we see nothing illogical in the provisions of I.C. § 45–806, safeguarding holders of pre-existing security interests but not owners.

■ This opinion has given this Court its first opportunity to interpret I.C. § 45–806 since its amendment in 1935.[12] That amendment establishes the notification procedure for achieving priority for a garageman's lien over pre-existing security interests noted on a vehicle's certificate of title. Though not addressed directly to the present action, brief remarks are in order regarding certain policy implications of the statute as amended. It is common knowledge that many owners have financed the purchase of their automobiles and as security have pledged with lending institutions the certificates of title to the automobiles. Many other owners likely keep the certificates locked in safe deposit boxes. The point being that when someone needs repairs for his automobile, he may not have immediate access to the certificate of title.[13] In such a situation, until he is paid

---

*repairing and if notice in writing within said three days be not given by such holder of mortgage or holder of conditional contract or title retaining note notifying said firm or corporation not to perform said services then the said making, altering or repairing may proceed and the prior lien provided for herein attaches to said property."*

12. The only Idaho opinion concerning the statute was decided in 1924, Neitzel v. Lawrence, 40 Idaho 26, 231 P. 423. That case is in no way pertinent to the points involved in this action.

13. And if the certificate of title is produced and it shows secured interests, the garageman must wait three days after giving notice before commencing repairs. But the general dependence on automo-

a prudent garageman may well refuse to repair the vehicle or to release possession of it if it has been repaired. Thus immobilized, the vehicle is of little value to anyone.

Nevertheless, the priority provisions of I.C. § 45–806, as amended in 1935, are quite clear, and the problems we have just discussed are of course legislative matters.[14] As such, we can do no more than point out that the problems inherent in I.C. § 45–806 may leave that statute unworkable.

Judgment affirmed. Costs to respondent.

SMITH, C. J., and TAYLOR, McFADDEN, and SPEAR, JJ., concur.

biles in today's society, especially in a spacious state like Idaho with its many rural areas, indicates that often repairs are needed immediately. See Note, 70 Yale L.J. 995, 1014 (1961). See generally, 7A Blashfield, Cyclopedia of Automobile Law and Practice § 5162 (perm. ed.1950).

14. We note that in 1967, the legislature enacted, as part of Idaho's adoption of the Uniform Commercial Code, a statute giving priority to a lien for repairs ("services or materials") above a pre-existing perfected security interest "unless the lien is statutory and the statute expressly provides otherwise." I.C. § 28–9–310. However, at the same time a slight amendment was made to I.C. § 45–806 (see n. 4, supra), the statute's priority provisions otherwise being left in effect.