**In re Eric Dean BOGGAN, Debtor.**

**Eric Dean Boggan, Appellant,**

**v.**

**Hoff Ford, Inc., d/b/a, Hall–Copeland Ford, Lincoln, Mercury, Mazda, Appellee.**

**BAP No. ID–00–1041–RYKR.
Bankruptcy No. 99–20917,
Adversary No. 99–6190.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 16, 2000.

Decided July 7, 2000.

Milan E. Miller, Lewiston, ID, for Eric Dean Boggan.

Charles A. Brown, Lewiston, ID, for Hoff Ford, Inc.

Before RYAN, KLEIN, and RUSSELL, Bankruptcy Judges.

## *OPINION*

RYAN, Bankruptcy Judge.

In May 1999, Eric Boggan ("Debtor") took his car to Hoff Ford, Inc. ("Hoff") for repairs. The repair bill totaled nearly $700. Because Debtor was unable to pay for the repairs, Hoff exercised its state law rights to retain possession of the car as security for repayment.

Two months later, Debtor filed a chapter 13 [1] bankruptcy petition. After unsuccessfully attempting to regain possession of the car, Debtor filed an adversary complaint (the "Complaint") against Hoff pursuant to § 542(a) and § 362(a) seeking the recovery of the car and damages for violation of the automatic stay. Debtor sought and obtained a preliminary injunction requiring Hoff to turn over the vehicle but permitting it to assert its lien rights in Debtor's adversary proceeding and chapter 13 case as if it had not relinquished possession. The parties then filed cross motions for summary judgment on the issue of whether Hoff had willfully violated the automatic stay, thus entitling Debtor to damages pursuant to § 362(h). After a hearing, the court held that Hoff had not

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

violated the automatic stay and dismissed the Complaint. Debtor timely appealed.

We AFFIRM.

## I. FACTS

The following facts are undisputed. In May 1999, Debtor took his car to Hoff for repairs but was unable to pay for the completed work. Pursuant to Idaho law, Hoff retained the car as collateral for the unpaid repair bill. In order to maintain perfection of its statutory lien, Hoff was required to retain possession of the car.

On August 2, 1999, Debtor filed a chapter 13 bankruptcy petition. On August 3, 1999, Debtor's attorney notified Hoff of the bankruptcy case and demanded that it surrender Debtor's car. When Debtor appeared to pick up the car, Hoff refused to return the car to Debtor. On August 6, 1999, Hoff's attorney sent Debtor's attorney a letter informing him that Hoff would return possession of the car to Debtor

> if there is statutory authority requiring them to do so, if there is a court order requiring them to do so, or if there can be bonafide reassurance to them that once they hand over the automobile that their security interest status will not be lessened in any manner. . . .

> Again, my client simply wants to comply with the applicable law in this matter. If you would be so kind as to supply me with the statutory authority that requires my client to relinquish a position we will certainly do so.

Letter from Charles A. Brown to Milan E. Miller (Aug. 6, 1999). An August 9, 1999 phone call was also unsuccessful in getting Hoff to surrender possession of the car.

 · Therefore, on August 10, 1999, Debtor filed the Complaint. On August 17, 1999, Debtor obtained a preliminary injunction ordering Hoff to return the vehicle to Debtor, but allowing Hoff to assert its lien rights in Debtor's bankruptcy case and adversary proceeding as if it had not relinquished possession of the car. In September 1999, Debtor filed a motion for summary judgment (the "Motion") seeking a determination that Hoff had violated the automatic stay and that Debtor was therefore entitled to damages under § 362(h). Hoff opposed the Motion and filed a cross motion for summary judgment (the "Cross Motion") seeking a determination that Hoff had not violated the automatic stay. After a hearing, the court issued its memorandum decision and order denying the Motion and granting the Cross Motion. The order was entered on November 30, 1999, and Debtor filed a timely notice of appeal on December 7, 1999.[2]

## II. ISSUE

Whether the bankruptcy court erred in determining that Hoff had not violated the automatic stay.

## III. STANDARD OF REVIEW

 A motion for summary judgment is reviewed de novo. *See Parker v. Saunders (In re Bakersfield Westar, Inc.)*, 226 B.R. 227, 231 (9th Cir. BAP 1998).

## IV. DISCUSSION

*The Bankruptcy Court Did Not Err in Determining That Hoff Did Not Violate the Automatic Stay.*

In the Motion, Debtor contended that Hoff had violated § 362(a)(3), which prohibits acts to exercise control over proper-

---

**2.** Rule 9021 requires that "[e]very judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document." FED.R.BANKR.P. 9021 A separate document means one that is separate from an opinion, memorandum, or findings of the court. The purpose of this requirement is to clarify when the time to appeal begins to run. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). However, application of the rule may be waived by the parties' actions when they indicate that they considered the document in question to be final for purposes of appeal. *Id.* at 384–87, 98 S.Ct. 1117. Here, Debtor filed a notice of appeal from the court's memorandum decision and order and has not objected to taking the appeal in the absence of a separate judgment. Under these circumstances, Debtor has waived application of this rule, and we therefore have jurisdiction over the appeal.

ty of the estate, by retaining possession of the car postpetition.

The bankruptcy court disagreed and held that Hoff, a possessory statutory lienholder, did not violate the automatic stay by failing to surrender the car because it was not an exercise of control over property of the estate that violated the automatic stay, citing § 362(b)(3). Accordingly, it denied the Motion, granted the Cross Motion, and dismissed the Complaint.

On appeal, Debtor contends that Hoff's failure to surrender the car was a violation of § 362(a)(3), citing our decision in *Expeditors Int'l of Wash., Inc. v. Colortran, Inc. (In re Colortran, Inc.)*, 210 B.R. 823 (9th Cir. BAP 1997), *aff'd in part and vacated in part on other grounds*, 165 F.3d 35 (9th Cir.1998). With respect to the application of § 362(b)(3), Debtor argues that this section is subject to the limitations set forth in § 546(b). Because § 546(b) provides that it limits the trustee's rights and powers under §§ 544, 545, and 549 without reference to § 542(a), Debtor argues that § 362(b)(3) cannot provide Hoff with an exception to the automatic stay. Instead, Debtor contends that Hoff should have surrendered the car and that its remedy was to seek adequate protection or relief from the automatic stay. Because it did not do so, Debtor argues that Hoff violated the automatic stay, thus entitling him to damages under § 362(h). We disagree.

Section 362(a) provides that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The Ninth Circuit has held that the knowing reten-

tion of estate property is a violation of the automatic stay. *See State of Cal. Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir. 1996).

However, under § 362(b)(3), the filing of a petition does not stay "any act to perfect, or maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." 11 U.S.C. § 362(b)(3). The relevant portion of § 546(b) in turn provides that

> [t]he rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—
>
> ....
>
> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

11 U.S.C. § 546(b)(1)(B).[3] "Generally applicable law" includes state law. *See Village Nurseries v. Gould (In re Baldwin Builders)*, 232 B.R. 406, 410 (9th Cir. BAP 1999). Thus, in order to be applicable, the relevant state law must provide that the creditor's security interest is superior to the rights of any entity (i.e., the trustee as a hypothetical judicial lien creditor as of the commencement of the case under § 544(a)) obtaining its interest in the property prior to the date that the creditor takes an action to maintain or continue perfection of its lien.

Our task here then is to determine if Idaho Code ("IC") § 45–806 fits

---

**3.** Section 546 was amended by the Bankruptcy Reform Act of 1994 to add § 546(b)(1)(B). The purpose of the amendment was

> to confirm that certain actions taken during bankruptcy proceedings pursuant to the Uniform Commercial Code to maintain a secured creditor's position as it was at the commencement of the case do not violate the automatic stay. Such actions could include the filing of a continuation statement

and the filing of a financing statement. The steps taken by a secured creditor to ensure continued perfection merely maintain the status quo and do not improve the position of the secured creditor.

H.R.Rep. No. 103–835, 2d sess. (Oct. 4, 1994), U.S.Code Cong. & Admin. News p. 3340, *reprinted in* E L. KING, COLLIER ON BANKRUPTCY App. Pt. 9(b) § 204, at App. Pt. 9–84 (15th ed. rev.1999).

within the framework of § 546(b)(1)(B). In interpreting these statutory provisions, we must be guided by their plain language. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(stating that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (citation omitted). When "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Id.* (citation omitted). Guided by this principle, we first interpret IC § 45-806.

■ IC § 45-806 provides that

[a]ny person, firm or corporation, who makes, alters or repairs any article of personal property, at the request of the owner or person in legal possession thereof, has a lien, which said lien shall be superior and prior to any security interest in the same for his reasonable charges for work done and materials furnished, and may retain possession of the same until the charges are paid.

IDAHO CODE § 45-806 (1999). The lien automatically attaches to the vehicle upon the commencement of repairs at the request of its lawful possessor. *See American Mach. Co. v. Fitzpatrick*, 92 Idaho 416, 443 P.2d 1013, 1017 (1968). Additionally, it requires continuous possession in order to maintain perfection of the lien. *See Jahnke v. Mesa Equip., Inc.*, 128 Idaho 562, 916 P.2d 1287, 1290 (App.Ct.1996). Thus, § 45-806 provides that the mechanic's lien is superior and prior to any security interest in the car obtained after commencement of the repairs as long as the mechanic maintains perfection by not voluntarily surrendering possession of the car.

■ The question here is whether IC § 45-806 satisfies the requirements of § 546(b)(1)(B). On its face, § 546(b)(1)(B) requires that the applicable state law provide (1) for the maintenance or continuation of perfection of a lien on property (2) that is effective against a lienholder (3) who obtains an interest in the property before action is taken to maintain or continue perfection. *See* 11 U.S.C. § 546(b)(1)(B). Applying these requirements to IC § 45-806, we see that IC § 45-806 provides a lien on property that is repaired, and as long as the lienholder does not voluntarily surrender possession of the property, the lien has priority over other liens that exist prior to or are obtained subsequent to the commencement of the repairs. Therefore, IC § 45-806 satisfies the requirements of § 546(b)(1)(B).

■ Here, once Hoff commenced the repairs, it obtained a lien to secure the payment of its reasonable charges for the work and any parts. As long as Hoff maintained possession of the car, it had a perfected lien that was superior to any prior lien on notice[4] and any lien arising after the commencement of the repairs. Hoff maintained continuous possession of the car until the court ordered its turnover on August 17, 1999. Under § 544(a)(1), a trustee has the status of a judgment lien creditor as of the filing date, which here was August 2, 1999. Because Hoff retained possession of the car and took actions to maintain continuous perfection of its lien, both before and after August 2, 1999, § 546(b)(1)(B) applies and preserves Hoff's priority over any interest in the car that a trustee may assert under § 544. Therefore, because Hoff obtained a possessory lien on Debtor's car for repair services under IC § 45-806 and because IC § 45-806 satisfies the requirements of § 546(b)(1)(B), no stay arose to bar Hoff's retention of the car to maintain perfection of its lien.

---

4. In order to obtain priority over a lien perfected prior to commencement of the repairs, the mechanic must give written notice to the lienholders that repairs on the car will commence in three days. If the lienholders do not notify the mechanic within those three days that the mechanic is not to perform those repairs, then the mechanic may commence the repairs with assurance that its lien will obtain priority over those lienholders. *See* IDAHO CODE § 45-806 (1999).

We disagree with Debtor's contention that our decision in *Colortran* dictates a different result. In *Colortran*, Expeditors International was a freight forwarder who retained possession of a shipment belonging to the debtor, who owed Expeditors $8,145.94. Expeditors informed the debtor's attorney that it had a contractual lien for the past-due amount that attached to the shipment in its possession. Rather than litigate the validity of Expeditors' lien, the debtor filed a motion for approval of a compromise with Expeditors under which the debtor would pay the past-due amount and Expeditors would release the shipment. The bankruptcy court denied the motion on the basis that Expeditors did not have a valid lien, ordered it to turn over the shipment, and instructed the debtor to file a motion for violation of the automatic stay. The bankruptcy court subsequently found that Expeditors had violated the automatic stay and sanctioned it $1,000. On appeal, we held that Expeditors had violated both § 362(a)(3) and (a)(4) by retaining possession of the shipment in order to enforce its perfected lien, which lien secured a prepetition debt. In affirming the bankruptcy court, we held that

> [w]hen the creditor's perfection of its security interest is dependant on possession of estate property, the question arises how the creditor can comply with §§ 362 and 542 and still protect its perfected security interest. A creditor who requires possession in order to achieve or maintain perfection has the right to file a motion for relief from the automat-

ic stay and request adequate protection such that its lien rights are preserved. However, the creditor must tender the goods or face sanctions for violation of the stay. The creditor has a right to and may request terms of adequate protection while simultaneously returning the goods. However, while the creditor may suggest terms of adequate protection, it may not unilaterally condition the return of the property on its own determination of adequate protection. If the creditor and the debtor cannot agree on what constitutes adequate protection, the creditor can request a hearing, with the debtor having the burden of proving that the creditor's rights will be adequately protected. If the creditor is convinced that its interest will be irreparably harmed if the property is turned over before the motion for relief from stay can be heard, it may request an emergency hearing under § 362(f).

*Colortran*, 210 B.R. at 827–28.

However, because § 362(b)(3) was not implicated in *Colortran* and we therefore did not address the impact of § 362(b)(3) and § 546(b)(1)(B) on the analysis, *Colortran* does not control our decision here.[5]

## V. CONCLUSION

In sum, applying § 362(b)(3) and § 546(b)(1)(B) to Hoff's postpetition retention of Debtor's car to maintain perfection of its possessory statutory lien, we hold that no stay arose and therefore Hoff did not violate the automatic stay.

AFFIRMED.

---

**5.** Although it is distinguishable, *Colortran* does shed light on the duties of a creditor who is required by state law to retain possession of estate property in order to maintain or continue perfection of its lien. In order to understand the relevance of *Colortran* to such a lienholder's duty, we must turn to § 542(a).

Section 542(a) "grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings." *United States v. Whiting Pools*, 462 U.S. 198, 207, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Specifically, § 542(a) provides that

an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

In *Whiting Pools*, the Internal Revenue Service ("IRS") held a tax lien for unpaid federal taxes and levied on Whiting Pools' ("Whiting") property and equipment. The

KLEIN, Bankruptcy Judge, concurring.

I join the opinion and write separately (in the interest of providing guidance to parties in future situations) to note my understanding of practical aspects of our decision today.

While we correctly distinguish and confine *Colortran* to a context that does not involve the assertion of one of the statutory safe harbors of Bankruptcy Code § 362(b), we do not solve the three-faceted dilemma that arises whenever a creditor claiming lien rights has possession of property in which the estate claims an interest and wants to have turned over.

The conundrum for the various parties is what to do, at what risk, and on whose initiative? Mere incantation of Bankruptcy Code §§ 362(a), 362(b), 542, and 546 often leads into circular argument that does little to move parties from finger pointing to resolution and that confirms the accuracy of Benjamin Franklin's observation that "many a long dispute may be thus abridged: It is so. It is not so. It is so. It is not so." B. Franklin, Poor Richard's Alamanack 1745.

In the interest of promoting predictability, I submit that the prudent course depends upon the relative nature of the rights that are in issue in each specific situation. One can profit by comparing this case with *Colortran* and *Whiting Pools*.

In the present situation, the creditor can comfortably rely upon the safe harbor of § 362(b)(3) because, I suggest, the repairman's lien under Idaho Code § 45–806 is unambiguous, arises contemporaneously with the repairs performed, and plainly would be difficult for a bankruptcy trustee to defeat. While the vehicle may have to be turned over, the creditor's right to insist upon adequate protection is powerful.

In contrast, and looking beyond our formal distinction of the *Colortran* decision (as not presenting a § 362(b)(3) question) to a broader functional sense, the putative lien rights that led our *Colortran* panel to place the burden, risk, and obligation on the creditor were considerably more doubtful. They were ambiguous, supposedly contractual, and existed for the purpose of collecting antecedent debts in a fashion that would invite scrutiny by any competent bankruptcy trustee or competing creditor. If anything, the overall situation smacked of cynical overreaching by a creditor that thought it had the leverage to bludgeon the estate into paying an ante-

---

next day, Whiting filed its chapter 11 bankruptcy petition. The IRS quickly moved for a determination that the automatic stay was inapplicable or, alternatively, for relief from the automatic stay. Whiting counterclaimed for an order requiring the IRS to turn over the property pursuant to § 542(a). The issue before the Court was whether § 542(a) required the IRS to turn over the property. *See Whiting Pools*, 462 U.S. at 203–04, 103 S.Ct. 2309. The Court held that property in which a secured creditor has an interest is included in property of the estate.

> Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" of their interests. At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or

lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to this provision for protection, rather than to the nonbankruptcy remedy of possession.

*Id.* (citation omitted). The Court further noted that this interpretation ensured that the bankruptcy estate would not be deprived of assets and property essential to the debtor's rehabilitation, thereby furthering the congressional purpose behind the reorganization provisions. *Id.* at 208, 103 S.Ct. 2309.

Thus, although a secured creditor does not violate the automatic stay by retaining possession of estate property in order to maintain or continue perfection of its lien under § 546(b)(1)(B), it must still comply with § 542(a), although it is entitled to seek adequate protection of its interest in order to preserve its lien rights. *Id.* at 207, 103 S.Ct. 2309; *see also Colortran*, 210 B.R. at 827.

cedent debt without having to run the gauntlet of having its lien rights scrutinized.

The message here is that in the business of wresting control of estate property from the hands of creditors in the often-chaotic early days of reorganization situations (chapters 11, 12, and 13), bankruptcy courts give creditors sympathy in proportion to their respective rights: creditors with unquestioned lien rights that are not vulnerable to avoidance by a bankruptcy trustee and who are not overreaching receive more sympathy than creditors with more debatable rights.

The other message, which is illustrated by our assessment of this case and by *Whiting Pools,* is that it behooves all parties to bring any disagreement promptly to court and to have comported themselves in a manner in which they appear to have been attempting to be reasonable, especially as to the key issue of adequate protection.