In re Anthony Kyle HAYDEN and
Margaret Marie Hayden,
Debtors.

Anthony Kyle Hayden and Margaret
Marie Hayden, Appellants,

v.

David L. Wells, dba Jack's
Towing, Appellee.

BAP No. WW–03–1385–MoMeP.
Bankruptcy No. 02–40492.
Adversary No. 02–04103.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Submitted Without Oral Argument
on Jan. 22, 2004.

Filed March 24, 2004.

Darren C. Walker, Vancouver, WA, for Anthony and Margaret Hayden.

Randall Stewart, Vancouver, WA, for David Wells.

Before MONTALI, MEYERS,[1] and PERRIS, Bankruptcy Judges.

## *OPINION*

MONTALI, Bankruptcy Judge.

Prior to the petition date, the state police ordered impoundment of the debtors' vehicle, and the defendant towing company took possession of it. After the debtors filed bankruptcy, they repeatedly requested the towing company to turn over the vehicle. The towing company refused. Approximately six weeks after the bankruptcy petition was filed and following a conditional order of turnover, the towing company released the vehicle to the debtors. The debtors then filed an adversary proceeding pursuant to 11 U.S.C. § 362(h)[2] for damages arising from a wilful violation of the automatic stay. Following trial, the bankruptcy court entered judgment in favor of the towing company. We AFFIRM.

---

1. Hon. James W. Meyers, Bankruptcy Judge for the Southern District of California, sitting by designation.

2. Unless otherwise indicated, all section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

## I.

## FACTS

On or about December 14, 2001, the Washington State Patrol ("the WSP") cited Anthony Hayden ("Mr. Hayden" or, collectively with his wife Margaret Hayden, "Debtors") for driving with a suspended license. His vehicle was impounded; acting at the direction of the WSP, David Wells d/b/a Jacks Towing ("Defendant") took custody of the vehicle for 30 days. A notice of vehicle impound was issued informing Debtors that the vehicle could be redeemed by payment of costs related to the removal, towing and storage of the vehicle and upon proof from the impounding agency of satisfaction of any penalties, fines or forfeitures. The notice also stated:

> The towing firm (within 5 days of the impound) is requiring payment of a security deposit in an amount of one-half of the applicable storage rate for the above hold period [of 30 days].

> If the security deposit is not paid, the vehicle will be processed as abandoned and sold at auction. The registered owner will be ineligible to purchase the vehicle. The security deposit may be paid up to 24 hours before the auction.

Debtors did not pay the security deposit. Therefore, on December 24, 2001, a notice of custody and sale of abandoned vehicle was issued notifying Debtors that the vehicle would be sold at an auction on January 17, 2002.

On January 15, 2002, Debtors filed a Chapter 13 bankruptcy petition. Defendant does not dispute that the vehicle was either property of the estate or property of the Debtors as of that date. On January 16, 2002, Darren C. Walker ("Walker"), counsel for Debtors, contacted Defendant and demanded release of the vehicle. Walker sent a letter to Defendant on the same date, providing formal notice of the bankruptcy filing and making another demand for turnover of the vehicle. Although Defendant did not turn over the vehicle, he did not put it up for auction on January 17 (or any other date).

On February 6, 2002, the WSP faxed to Defendant a copy of a letter addressed to Mr. Hayden stating that it was approving a hardship release of the vehicle. The WSP nonetheless informed Mr. Hayden that all towing, removal and storage fees had to be paid to Defendant before the vehicle could be released. Defendant also had to certify that the vehicle was insured. On the same date, Walker sent another letter to Defendant demanding release of the vehicle and warning him that he would file a motion for turnover and sanctions if it was not released by the next day.

Debtors filed a motion for turnover and sanctions and a motion to shorten time on February 8, 2002. A hearing on the turnover/sanctions motion was set for February 14, 2002, and the court signed the order shortening time on February 14, 2002. The parties did not provide any of these documents in the excerpts of record.

On February 14, 2002, the bankruptcy court entered an order granting the motion for turnover and sanctions. The court ordered Defendant to return the vehicle to Debtors (without conditioning the release on any performance by Debtors) and sanctioned Defendant in the amount of $1,200 (the amount of Debtors' attorneys' fees). Walker faxed a copy of this order to Defendant on the same day.

Defendant filed a motion to vacate the order and for sanctions on February 25, 2002. On the same date, Debtors filed a motion for contempt against Defendant. Neither motion is a part of the record. The court held a hearing on both motions on February 28, 2002, and entered an in-

terim order on motion for contempt on March 5, 2002. This interim order required Defendant to release the vehicle to Debtors upon Debtors' performance of the following events: (1) production of proof of insurance on the vehicle; (2) delivery to Defendant of the certificate of title to the vehicle and any other documentation necessary to perfect notice of Defendant's lienholder status; and (3) execution of the certification required by the WSP.

Debtors performed the conditions required by the court and Defendant released the vehicle to them on March 1, 2002. On April 3, 2002, the bankruptcy court vacated its prior order imposing sanctions against Defendant. The April 3 order is not a part of the record.

On May 10, 2002, Debtors filed an adversary proceeding against Defendant alleging violation of the automatic stay and requesting sanctions and damages. On June 4, 2003, the bankruptcy court held a trial in the adversary proceeding and took the matter under advisement. Mr. Hayden testified that because of Defendant's retention of the automobile, he lost five eight-hour days of work for a total loss of $560.00.

On July 15, 2003, the bankruptcy court entered an order finding no violation of the automatic stay and denying Debtors' request for sanctions. This order, even though it is the subject of the current appeal, is not in the excerpts of record. On the same date, the court entered a memorandum decision setting forth its findings of fact and conclusions of law. The bankruptcy court concluded that retention of the vehicle by Defendant did not violate the automatic stay because such retention fell within the exception to stay set forth in section 362(b)(3).

Debtors filed a timely notice of appeal on July 23, 2003.

## II.

## ISSUE

Did the bankruptcy court err in concluding that Defendant's retention of the vehicle did not violate the automatic stay?

## III.

## STANDARD OF REVIEW

■ We review a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Jodoin*, 209 B.R. 132, 135 (9th Cir. BAP 1997).

■ We review *de novo* a bankruptcy court's interpretation and application of section 362(h). *In re Stainton*, 139 B.R. 232, 234 (9th Cir. BAP 1992). Moreover, a bankruptcy court's determination of whether the automatic stay provisions of section 362 have been violated involves a question of law that is subject to *de novo* review. *In re Del Mission Ltd.*, 98 F.3d 1147, 1150 (9th Cir.1996); *In re Miller*, 262 B.R. 499, 502 (9th Cir. BAP 2001).

## IV.

## DISCUSSION

A. *Overview of Arguments and Relevant Bankruptcy Sections*

■ Debtors contend that Defendant's retention of the vehicle constitutes an act "to exercise control over property of the estate" in violation of section 362(a)(3). The Ninth Circuit has held that this section "proscribe[s] the mere knowing retention of estate property." *Del Mission*, 98 F.3d at 1151 (holding that state violated automatic stay by knowingly retaining taxes that it had been ordered to repay debtor); *see also In re Colortran, Inc.*, 210 B.R. 823, 826–27 (9th Cir. BAP 1997) ("A creditor who fails to return the estate's property after it knows of the debtor's

bankruptcy is subject to sanction for willful violation of the automatic stay."), *aff'd in part and vacated in part on other grounds,* 165 F.3d 35 (9th Cir.1998); *In re Abrams,* 127 B.R. 239, 241–43 (9th Cir. BAP 1991) (creditor's continuing retention of repossessed vehicle after receiving notice of bankruptcy violated the automatic stay). "To effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor." *Del Mission,* 98 F.3d at 1151.

Debtors further argue that Defendant's continued possession of the vehicle after the petition date constitutes an act to "create, perfect or enforce a lien" against property of the estate or property of the Debtors and thus violated section 362(a)(4) and (5).

In response, Defendant argues that his retention of the vehicle falls within the exception to the automatic stay provided by section 362(b), which states that the filing of a petition does not stay an "act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b)..." 11 U.S.C. § 362(b)(3). Section 546(b)(1)(B) provides that a trustee's rights and powers "are subject to any generally applicable law that ... provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation." 11 U.S.C. § 546(b)(1)(B).

■ In other words, if state law provides that a creditor's security interest is superior to the rights of any entity obtaining its interest in the property prior to the date the creditor takes action to maintain or continue perfection of its lien, the creditor's post-petition act to maintain or continue perfection of the lien does not violate the automatic stay. *In re Boggan,* 251 B.R. 95, 99 (9th Cir. BAP 2000) (holding that automobile dealership that retained possession of debtor's automobile as security for repayment of unpaid repair bill pursuant to Idaho law did not violate automatic stay). Relying on *Boggan,* Defendant contends (and the bankruptcy court agreed) that Washington statutory law granting Defendant a lien for towing and storage charges falls within the ambit of section 546(b)(1)(B) and thus within the exception to the automatic stay set forth in section 362(b)(3).

B. *Relevant Washington Law*

Section 46.55.115 of the Revised Code of Washington ("RCW § 46.55.115") provides that a towing operator appointed by the WSP to remove, tow and store a vehicle shall have a lien on the vehicle for the costs of removal and storage. RCW § 46.55.115 ("The costs of removal and storage of vehicles under this section shall be paid by the owner or driver of the vehicle and shall be a lien upon the vehicle until paid, unless the removal is determined to be invalid."). Similarly, RCW § 46.55.140(1) provides that a "registered tow truck operator who has a valid and signed impoundment authorization has a lien upon the impounded vehicle for services provided in the towing and storage of the vehicle, unless the impoundment is determined to have been invalid." RCW § 46.55.140(1).

RCW § 46.55.120 governs the redemption rights of owners of impounded vehicles. Subsection (1)(a) of RCW § 46.55.120(a) states that "[i]f a vehicle is impounded because the operator is arrest-

ed for a violation of RCW [§ ] 46.20.342,[3] *the vehicle may not be released* until a person eligible to redeem it under this subsection (1)(a) *satisfies the requirements of (e) of this subsection, including paying all towing, removal and storage fees,* notwithstanding the fact that the hold was ordered by a government agency." RCW § 46.55.120(1)(a) (emphasis added). Analyzing this subsection of RCW § 46.55.120, one commentator has specifically stated that a lien for costs of towing, impoundment and storage is possessory. Gerald F. Hess, *Priority Conflicts Between Security Interests and Washington Statutory Liens for Services or Materials,* 25 Gonz. L.Rev. 453, 469 n. 99 (1990) (The lien provided by RCW 46.55.140(1) "is possessory.").

■ Furthermore, RCW § 46.55.120(e) provides that an impounded vehicle shall be released "upon the presentation to any person having custody of the vehicle of commercially reasonable tender sufficient to cover the costs of towing, storage, or other services rendered during the course of towing, removing, impounding, or storing any such vehicle ...." RCW § 46.55.120(e). Moreover, RCW § 46.55.120(d) provides that a motor vehicle dealer or lender with a perfected security interest in the vehicle may redeem or lawfully repossess the vehicle by payment of the costs of removal, towing, and storage. In other words, as long as the towing operator retains possession of the vehicle, its right to be paid costs of removal and storage primes the liens of creditors who held pre-existing rights in the vehicle.

## C. *Boggan*

■ The bankruptcy court held that the foregoing Washington statutes fit within the framework of section 546(b)(1)(B) and, therefore, that Defendant's retention of the vehicle constituted an act to maintain or continue the perfection of his lien which is excepted from the automatic stay by section 362(b). In so holding, the bankruptcy court relied heavily on *Boggan.*

The *Boggan* panel held that an Idaho mechanic's lien statute fell within the scope of section 546(b)(1)(B) and thus that a car dealership's postpetition retention of a debtor's car to maintain perfection of its (the dealership's) possessory lien did not violate the automatic stay. *Boggan,* 251 B.R. at 100–01. In *Boggan,* the relevant state law was section 45–806 of the Idaho Code ("IC § 45–806"), which provided:

Any person, firm or corporation, who makes, alters or repairs any article of personal property, at the request of the owner or person in legal possession thereof, has a lien, which said lien shall be superior and prior to any security interest in the same for his reasonable charges for work done and materials furnished, and may retain possession of the same until the charges are paid.

*Boggan,* 251 B.R. at 100. The *Boggan* court held that this Idaho statute fell within the ambit of section 546(b)(1)(B) because it "provided (1) for the maintenance or continuation of perfection of a lien on property (2) that is effective against a lienholder (3) who obtains an interest in the property before action is taken to maintain or continue perfection." *Id.* at 100. The panel stated:

Applying these requirements to IC § 45–806, we see that IC § 45–806 provides a lien on property that is repaired, and as long as the lienholder does not

---

**3.** RCW § 46.20.342 prohibits driving while a license is suspended or revoked. The record reflects that the WSP directed impoundment of Debtors' vehicle because Mr. Hayden was driving while his license was suspended. He was therefore in violation of RCW § 46.20.342.

voluntarily surrender possession of the property, the lien has priority over other liens that exist prior to or are obtained subsequent to the commencement of the repairs. Therefore, IC § 45–806 satisfies the requirements of § 546(b)(1)(B). *Id.* Consequently, the dealership's post-petition retention of the automobile in *Boggan* was an act to maintain perfection of its possessory statutory lien and was not a stay violation.

Applying a similar analysis to the facts of this case, the bankruptcy court held that the Washington statutes satisfied the requisites of section 546(b)(1)(B). We agree. First, RCW § 46.55.115 and RCW § 46.55.140(a) create a statutory lien in favor of Defendant.

Second, although not specifically stated in the statute, possession is necessary for the lien to retain its priority, especially where the statute provides that the vehicle "may not be released" until the applicable towing and storage costs are paid. RCW § 46.55.120(a)(1). As noted previously, RCW § 46.55.120(d) provides that a motor vehicle dealer or lender with a perfected security interest in the vehicle may redeem or lawfully repossess the vehicle by payment of the costs of removal, towing, and storage. As long as the towing operator retains possession of the vehicle, its right to be paid costs of removal and storage primes the rights of lienholders who held pre-existing interests in the vehicle. As the bankruptcy court correctly stated: "Although the Washington state statute does not specifically provide that the lien is a possessory lien, as with IC § 45–806, it is clear that the property need not be released until the relevant fees are paid. Possession is the only mechanism available to ensure satisfaction of the lien. It is this fact that makes the lien a possessory lien, not the label or lack thereof." While the bankruptcy court suggests that the vehicle

"need not be released" until the fees are paid, the relevant statutory language is even stronger: where the vehicle has been impounded because the operator was arrested for driving with a suspended license (as here), the vehicle *"may not be released"* until all towing, removal and storage fees are paid. RCW § 46.55.120(1)(a).

Third, as noted above, the practical effect of RCW § 46.55.120(d) is that the possessory lien here has priority over existing or subsequent liens. Because the Washington statutes, read together, satisfy the requirements of section 546(b)(1)(B), the bankruptcy court concluded that the automatic stay did not apply under section 362(b)(3) and that Defendant did not violate the stay in retaining the automobile. We affirm that holding.

### D. *Debtors' Other Arguments*

Debtors contend that section 546(b)(1)(B) is inapplicable here because Defendant failed to comply with section 546(b)(2). Section 546(b)(2) states that if the law described in section 546(b)(1)(B) requires seizure or commencement of an action to maintain or continue perfection of a lien and such seizure or commencement of action did not occur pre-petition, the creditor can perfect such interest by giving notice within the time fixed for the seizure or commencement of action. Section 546(b)(2), however, is simply inapplicable here. The vehicle was impounded by Defendant prepetition. The lien attached upon Defendant's possession of the vehicle and did not require postpetition seizure or commencement of action to maintain its perfection. As noted by the bankruptcy court, "no further action was necessary to maintain perfection other than continued possession."

Debtors further argue that even if section 546(b)(1)(B) were applicable here, Defendant did not simply "perfect" his lien by

maintaining possession of the vehicle but also "enforced" his lien. Therefore, according to Debtors, section 362(b)(3)—which excepts the perfection of certain liens but not the enforcement—does not protect Defendant from liability for violating the automatic stay. We disagree. The Washington statutes effectively (although not explicitly) require possession in order to maintain perfection. Defendant did not sell the vehicle at auction, and in fact eventually turned the vehicle over to Debtors. Defendant was maintaining perfection of his statutory lien, not enforcing the lien.

■ Finally, citing *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), Debtors contend that even if section 362(b)(3) excepted Defendant's conduct from the automatic stay, he was nonetheless obligated to turn over property of the estate pursuant to section 542(a). The bankruptcy court dismissed this argument, stating:

> The Court declines to sanction [Defendant] for refusing to immediately turnover [sic] the Property in this case. As stated above, [Defendant] was not in violation of the stay by maintaining possession of the Property. [Defendant] did return the Property when required by the Court pursuant to the March 5, 2002 order. As recognized in the concurring opinion in *Boggan*, an issue unresolved by the majority opinion in that decision is how to resolve the dilemma that arises between a creditor claiming a possessory lien right in estate property for which the trustee or debtor-in-possession seeks turnover. What is clear is that a debtor may seek an order of turnover and a creditor may seek adequate protection. However, what is not clear is who bears the burden and at what risk. [Defendant] could possibly have been more cooperative; and most

likely the case may have been resolved at an earlier date had he immediately sought bankruptcy counsel. The Debtors must also take some responsibility for the delays present in this case, because this Court has repeatedly advised counsel of its willingness to hold emergency telephone hearings in order to quickly resolve such issues before substantial fees are incurred by either party. The Court also notes that the relief sought by the Complaint was for damages caused by a stay violation, not for sanctions for failure to turnover [sic] the Property pursuant to 11 U.S.C. § 542. The Court concludes that sanctions are not warranted by either party under the facts of this case. One of the few clear lessons to be taken from this case is that in turnover situations, it is in both parties' best interest to bring such issues before the court as soon as possible so that they may be resolved quickly and with minimal expense.

The court's analysis is appropriate, particularly its observation that the complaint sought damages caused by a stay violation, not sanctions for failure to turn over property pursuant to section 542(a). Because section 362(b)(3) is applicable, Defendant did not violate the automatic stay and is therefore not liable for damages under section 362(h) for violation of the automatic stay.

## V.

## CONCLUSION

The bankruptcy court did not err in concluding that Defendant's retention of the vehicle constituted the maintenance or continuation of the perfection of his statutory lien, and that the statutory lien fell within the ambit of section 546(b)(1)(B). Therefore, the automatic stay did not apply to Defendant's actions under section 362(b)(3). Consequently, the bankruptcy

court did not err in denying Debtors' claim for damages against Defendant for violation of the automatic stay. For the foregoing reasons, we AFFIRM.