ELECTRONIC CITATION: 2012 FED App. 0009P (6th Cir.)
File Name: 2012b0009p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: SUSAN M. DANTONE; GUY R. DANTONE, | ) ) ) | |
| Debtors. | ) ) | |
| _____ | ) ) | |
| KURT DANTONE; CAROL DANTONE, | ) ) | No. 12-8006 |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| SUSAN M. DANTONE, | ) ) | |
| Defendant-Appellant. | ) ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Western District of Michigan.
Bankr. Case No. 11-07926; Adv. Case No. 11-80382.

Argued: August 7, 2012

Decided and Filed: September 13, 2012

Before: HARRIS, PRESTON, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

**COUNSEL**

**ARGUED:** W. Brendan Neal, ARMSTRONG LAW OFFICE, PLLC, St. Joseph, Michigan, for Appellant. John F. Magyar, MAGYAR LAW OFFICE, PC, Dowagiac, Michigan, for Appellees. **ON BRIEF:** W. Brendan Neal, Thomas R. Betker, ARMSTRONG LAW OFFICE, PLLC, St. Joseph, Michigan, for Appellant. John F. Magyar, MAGYAR LAW OFFICE, PC, Dowagiac, Michigan, for Appellees.

———————————————
**OPINION**
———————————————

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge. This is an appeal from the bankruptcy court's order granting summary judgment to Kurt Dantone and Carol Dantone ("Plaintiffs") on their claim that the debt owed to them by Susan Dantone ("Debtor" ) is nondischargeable under 11 U.S.C. § 523(a)(4).

## I.    ISSUES ON APPEAL

The issue presented by this appeal is whether the bankruptcy court erred in granting summary judgment to Plaintiffs on their nondischargeability claim based on the issue preclusive effect of a prior state court judgment. Debtor argues that the bankruptcy court applied the wrong definition of embezzlement for the purposes of § 523(a)(4) and erred when it afforded issue preclusive effect to the state court judgment because the issues required for a finding of embezzlement under § 523(a)(4) were not actually litigated and necessarily determined by the state court.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). An order granting summary judgment is a final order. *Buckeye Retirement Co., LLC v. Swegan* (*In re Swegan*), 383 B.R. 646, 649 (B.A.P. 6th Cir. 2008). " 'A bankruptcy court's judgment determining dischargeability is a final and appealable order.' " *Cash Am. Fin. Servs., Inc. v. Fox* (*In re Fox*), 370 B.R. 104, 109 (B.A.P. 6th Cir. 2007) (quoting *Hertzel v. Educ. Credit Mgmt. Corp.* (*In re Hertzel*), 329 B.R. 221, 224-25 (B.A.P. 6th Cir. 2005)).

The grant of summary judgment and the applicability of issue preclusion are reviewed *de novo. Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 461, 463 (6th Cir. 1999) (addressing

the application of issue preclusion under Michigan law). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Gen. Elec. Credit Equities v. Brice Rd. Develops., LLC* (*In re Brice Rd. Develops., LLC*), 392 B.R. 274, 278 (B.A.P. 6th Cir. 2008).

For the reasons that follow, we reverse the bankruptcy court's order granting summary judgment to Plaintiffs and remand the matter for further proceedings consistent with this opinion.

## III.   FACTS

In 2007, Plaintiffs were in possession of certain artifacts from a famous shipwreck.  In October 2007, Plaintiffs delivered these artifacts to Debtor for display and, according to Debtor, for sale in Debtor's jewelry store.  Thereafter, Debtor's jewelry store went out of business.  When Debtor returned the artifacts in September 2008, an emerald pendant and six musket balls were missing.

On September 1, 2010, Plaintiffs filed a complaint against Debtor in a Michigan state court alleging that Debtor's actions constituted a breach of fiduciary duty, common law conversion, and statutory conversion, or, in the alternative, negligence (the "Complaint").  The Complaint prayed for damages in the amount of $40,530.00 for breach of fiduciary duty and common law and statutory conversion of Plaintiffs' property.  With respect to the claim for negligence, Plaintiffs sought damages in the amount of $13,510.00.

Plaintiffs designated their allegations of breach of fiduciary duty, common law conversion, and statutory conversion as "Count I."  With respect to this count, the Complaint alleged:

> 24.     The Atocha treasure was delivered to Defendant Susan Dantone on or about October 27, 2007.  At that time, Defendant signed an acknowledgment that she had received the items along with various certificates of authenticity from Plaintiffs for display at her jewelry store located in Dowagiac called Perfect Memories. A copy of the inventory and signed acknowledgment is attached and incorporated herein by reference as Exhibit D.
>
> 25.     That by accepting the Atocha treasure for display, Defendant, as

bailee, owed Plaintiffs a duty of care not to do any intentional act inconsistent with the terms of the bailment and as bailee, is expected to take, at a minimum, reasonable precautions to safeguard the property.

26. That Plaintiffs at no time authorized Defendant to sell or otherwise dispose of the Atocha treasure.

27. Sometime thereafter, the jewelry store Perfect Memories went out of business.

28. Upon learning that the jewelry store had closed, Plaintiffs requested that Defendant return the Atocha treasure that had been displayed.

29. On or about September 30, 2008, Defendant returned all items except the 12.37 carat emerald pendant with gold wrap (and original Certificate of Authenticity) and six (6) of the seven (7) lead musket balls. Attached and incorporated herein by reference as Exhibit E is a picture of the lead musket balls.

30. When asked about the missing treasure, Defendant responded that "she had forgotten to return them but that she had the treasure in a box in her basement."

31. That Plaintiffs have repeatedly, both orally and in writing, demanded return of the missing treasure.

32. That Defendant has, both expressly and by her silence, refused to return the items, now claiming that the missing treasure may have been stolen.

33. That although the true value of the missing 12.37 carat emerald pendant with gold wrap cannot be ascertained, the treasured emerald has an estimated fair market value of $13,150.00.

34. That although the true value of the missing lead musket balls cannot be ascertained, they have an estimated fair market value of $60.00 each.

35. That by refusing to return the missing treasure, Defendant has unlawfully taken and asserted dominance over Plaintiffs' property.

36. That by refusing to return the missing treasure, Defendant is knowingly aiding in the concealment of converted property contrary to MCL 600.2919a.

37. That MCL 600.2919a provides for treble damages, costs and reasonable attorney fees.

38. That a bailee is liable for conversion if the bailee fails to return the bailed item as required, therefore, the acts described above constitute a breach of fiduciary duty and unlawful common law and statutory conversion of Plaintiffs' property, resulting in damages to Plaintiffs in the amount of $40,530.00.

(Compl. at 5-7, Adv. Proc. No. 11-80382, ECF No. 7-2.)

Plaintiffs designated their negligence claim in the Complaint as "Count II." With respect to

-4-

this count, the Complaint alleged:

40. Alternatively, Defendant's actions constitute negligence.

41. That when asked about the missing treasure, Defendant responded that she had forgotten to return them but that she had the treasure in a box in her basement.

42. That Plaintiffs informed Defendant that they would be coming to her home to retrieve the missing treasure.

43. That when learning of this, Defendant responded that she thought her babysitter may have taken the missing treasure.

44. That when confronted about the details concerning who the babysitter was and when the babysitter may have taken the treasure, Defendant replied that she "did not know" and "did not know the babysitter's name."

45. Shortly thereafter, Defendant changed her story and responded that she may have actually lost the items.

46. That regardless, as a result of her negligence, Defendant is unable to return the missing treasure to Plaintiffs, depriving them of their Atocha treasure.

( *Id.* at 7-8.)

On September 29, 2010, Debtor, *pro se*, filed an answer to the Complaint in state court. The answer did not deny that Debtor had received the emerald pendant and the musket balls. Although Plaintiffs had alleged that the property was given to Debtor only for purposes of display, Debtor's answer suggests there was an agreement between the parties to allow the sale of the items. In addition, Debtor alleged that a prosecutor found no criminal intent. Thereafter, Debtor failed to respond to discovery requests in the state court action.

On December 15, 2010, Plaintiffs filed a Motion for Summary Disposition in the Michigan state court. Plaintiffs argued that, because Debtor failed to respond to Plaintiffs' request for production of documents and request for admissions, certain facts should be deemed established and judgment should be entered in their favor. Plaintiffs sought the admission of the following:

A. That Defendant received from Plaintiffs various items, including a 12.37 carat emerald pendant with gold wrap (and original Certificate of Authenticity) and seven (7) lead musket balls.

B. That Defendant displayed the above items at her jewelry store.

C.    That Defendant has not returned the 12.37 carat emerald pendant with gold wrap (and original Certificate of Authenticity) and six (6) of the seven (7) lead musket balls to Plaintiff.

D.    That the 12.37 carat emerald pendant with gold wrap has a fair market value of approximately $13,150.00.

E.    That the lead musket balls have a fair market value of approximately $60.00 each.

F.    That Defendant told a Dowagiac Police Department Officer that she has been unable to locate the items and believes that the items may have been lost.

G.    That Defendant also told a Dowagiac Police Department Officer that she may have thrown the items away.

H.    That Defendant has made offers to pay Plaintiffs back for the items, but no payments have been made.

(Appellees' Mot. for Summ. Disp. at 2, Adv. Proc. No. 11-80382, ECF No. 7-2.)  Plaintiffs also alleged they had incurred costs and fees in the amount of $2,176.10.  Plaintiffs asked the state court to find that "by failing to return the property, defendant continues her distinct act of dominion wrongfully exerted over plaintiffs' property, thereby depriving plaintiffs of the property."  (*Id.*)

On January 31, 2011, the Michigan state court issued an oral ruling on Plaintiffs' Motion for Summary Disposition.  The state court noted that failure to respond to discovery requests should result in summary disposition only when it is egregious.  The state court found that Debtor's failure to respond to any of the written discovery requests, file a response to the Motion for Summary Disposition, and appear at the hearing on the motion were sufficient basis for the entry of an order granting summary disposition.  Although the state court did not specifically refer to Michigan Court Rule 2.313, which permits entry of a default judgment as a sanction for failure to comply with discovery requests, the state court did indicate in its oral ruling that the judgment was "based upon the complete and utter failure to respond to discovery requests in this case." (Tr. of H'rg at 2, Adv. Proc. No. 11-80382, Jan. 31, 2011, ECF No. 7-2.)  On January 31, 2011, the state court entered an order awarding Plaintiffs $42,706.10, plus statutory interest.  The judgment did not specify the claim or claims upon which it was based.

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on

July 26, 2011. Plaintiffs timely filed an adversary complaint seeking to have the debt owed to them declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4). On October 27, 2011, Plaintiffs filed a motion for summary judgment in the bankruptcy court. Plaintiffs did not specifically identify which part of § 523(a)(4) they relied upon in bringing their dischargeability complaint. They simply stated that Debtor's actions constituted "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny pursuant to 11 U.S.C. § 523(a)(4)." (Adv. Compl. at 1, Adv. Proc. No. 11-80382, ECF No. 1-2).

On December 22, 2011, the bankruptcy court heard oral argument on the motion for summary judgment and announced its oral ruling from the bench. On January 5, 2012, the bankruptcy court entered an order granting Plaintiffs' summary judgment motion and declaring the debt to be nondischargeable pursuant to § 523(a)(4) as a debt for embezzlement.

In analyzing the state court judgment, the bankruptcy court deduced from the amount of damages awarded that the judgment must have been based on Plaintiffs' claim for statutory conversion. The bankruptcy court noted that the facts alleged and deemed admitted in the state court proceeding gave some indications of fraud. The bankruptcy court then held that conversion under Michigan law, coupled with at least some indications of fraud, is tantamount to embezzlement under 11 U.S.C. § 523(a)(4). Therefore, applying principles of issue preclusion, the bankruptcy court determined that the debt was nondischargeable.

Debtor appeals from that determination arguing that the bankruptcy court applied the wrong definition of embezzlement, that the matters at issue in the state court do not include all of the issues required for a determination of embezzlement under § 523(a)(4), and that principles of issue preclusion should not apply to a judgment which does not identify with specificity the theory upon which it is based.

Prior to oral argument, the Panel asked the parties to brief the issues of whether Michigan state courts give issue preclusive effect to default judgments and whether it was appropriate for the Panel to raise this issue *sua sponte*.

## IV.    DISCUSSION

A.    *Summary Judgment*

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 of the Federal Rules of Civil Procedure was amended in 2010; however, "[t]he commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012) (citation omitted). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570. "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012) (citation and internal quotation marks omitted).

B.    *Issue Preclusion*

"[Issue preclusion, also known as collateral estoppel,] precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined." *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990) (citations omitted), *abrogated in part by Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 852 (Mich. 2004) (holding that mutuality is not always a necessary element of issue preclusion). Although a bankruptcy court must make its own determination regarding the dischargeability of a debt, that determination may be governed by factual issues which were actually and necessarily decided by a state court in a prior proceeding. *See Grogan v. Garner*, 498 U.S. 279, 284, n.11, 111 S. Ct. 654, 658, n.11 (1991) (holding that principles of issue preclusion apply in nondischargeability actions under § 523(a)). *See also Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693 (6th Cir. 1999); *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315 (6th Cir. 1997). A bankruptcy court is obligated to give a state court judgment the same

preclusive effect that the courts of the state in which the judgment was entered would accord it. *In re Fordu*, 201 F.3d at 703; *In re Calvert*, 105 F.3d at 317.

Under Michigan law, issue preclusion applies when:

1) there is identity of parties across the proceedings;

2) there was a valid, final judgment in the first proceeding;

3) the same issue was actually litigated and necessarily determined in the first proceeding; and

4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *Gates*, 452 N.W.2d at 630-31). In the case currently on appeal, the parties agree that the first, second, and fourth elements have been established. The only disputed issue is whether the third element has been satisfied. Debtor contends that the bankruptcy court erred because the state court did not necessarily determine all of the elements for nondischargeability for embezzlement under § 523(a)(4).

Analysis of the third element for issue preclusion requires a two-part inquiry: (1) was the issue "actually litigated" in the state court proceeding, and (2) was the issue "necessarily determined." *McCallum v. Pixley* (*In re Pixley*), 456 B.R. 770, 776 (Bankr. E.D. Mich. 2011) (citing Michigan case law). A party "is precluded from contesting any issue that was both 'actually litigated and necessarily determined' by a state court judgment." *Id.* at 778. An issue must meet both requirements before it is considered to have any preclusive effect in a subsequent proceeding. *Id.*

1.      *"Actually Litigated"*

"Under Michigan law, an issue is 'actually litigated' if it is 'put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter determined.'" *Phillips v. Weissert* (*In re Phillips*), 434 B.R. 475, 486 (B.A.P. 6th Cir. 2010) (citing *Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. 1986)). As noted previously, the Panel requested supplemental briefing on the issue of whether a default judgment meets the "actually litigated" requirement for issue preclusion because it appears that the Michigan Supreme Court may not give issue preclusive

effect to such judgments. In *Lichon v. American Universal Insurance Co.*, 459 N.W.2d 288 (Mich. 1990), the Michigan Supreme Court indicated that a default judgment is not entitled to preclusive effect because none of the issues is actually litigated. *Id.* at 299. The Michigan Supreme Court quoted with approval from comment e of § 27 of the Second Restatement of Judgments:

> Under 1 Restatement Judgments, 2d, § 27, p. 250, collateral estoppel applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment. . . ." Comment e to this section clarifies this rule: "A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action."
> . . . .
> Comment e of the Restatement Judgments, 2d, § 27, p. 257, further indicates that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.

*Id.* at 298-99 (internal citation omitted). Given the Michigan Supreme Court's favorable citations to § 27 of the Second Restatement of Judgments and to comment e in particular, and given no later case law from the Michigan Supreme Court repudiating this pronouncement, it seems fair to conclude that a default judgment entered by a state court in Michigan generally has no issue preclusive effect. *Cf. Sill v. Sweeney* (*In re Sweeney*), 276 B.R. 186, 193 (B.A.P. 6th Cir. 2002) (a default judgment entered by a state court in Ohio has no issue preclusive effect unless it is clear that the court's findings are based on admissible evidence as opposed to allegations deemed admitted by virtue of defendant's default).

Michigan bankruptcy courts appear to have overlooked *Lichon* in ruling on the preclusive effect of default judgments by Michigan state courts. *See In re Phillips*, 434 B.R. at 486 (detailing disagreement among courts regarding the preclusive effect of default judgments and collecting cases). However, the Panel concludes that it need not decide whether the state court judgment at issue in this case was actually litigated because Debtor conceded the element of "actually litigated" in briefing before the bankruptcy court. (Def's Br. in Opp'n to Mot. for Summ. J. at 5, n.2, Adv. Proc. No. 11-80382, ECF No. 10) (Debtor stated that by filing an answer in the state court proceeding, she participated in the state action and the issue, therefore, was "actually litigated"). Our general practice is not to consider arguments raised for the first time on appeal. *U.S. Bank Nat'l Ass'n v. Barbee* (*In re Barbee*), 461 B.R. 711, 718 (B.A.P. 6th Cir. 2011). Although there are

exceptions to this rule, *see U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446, 113 S. Ct. 2173, 2178 (1993); *United States v. Green*, 654 F.3d 637, 647 (6th Cir. 2011), given our ability to resolve this appeal based on an issue that was actually raised before the bankruptcy court and properly preserved on appeal, we see no reason to deviate from our general practice.

2.     *"Necessarily Determined"*

The Michigan Supreme Court holds that "[a]n issue is necessarily determined only if it is 'essential' to the judgment." *Gates*, 452 N.W.2d at 631 (citing Restatement (Second) of Judgments § 27 cmt. h (1982)). In *City of Detroit v. Qualls*, 454 N.W.2d 374 (Mich. 1990), the Michigan Supreme Court described the requirement further:

> 'The issue to be concluded must be the same as that involved in the prior action. In the prior action, the issue must have been raised and litigated, and actually adjudged. The issue must have been material and relevant to the disposition of the prior action. The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.' 1B Moore, Federal Practice, ¶ 0.443[1], p. 759.

*Qualls*, 454 N.W.2d at 382-83.

As previously noted, the state court judgment did not expressly indicate the basis for the money judgment awarded Plaintiffs. Nevertheless, the amount of the money judgment – $42,706.10 – suggests that it must have been based on Plaintiffs' claim for statutory conversion, – the only claim of the four claims pleaded that includes treble damages. Indeed, the judgment awarded is precisely three times the $13,510.00 in damages, plus $2,176.10 in costs and attorney's fees, sought in Plaintiffs' motion for summary disposition.

During argument before the bankruptcy court and in briefing before the Panel, the parties debated the issue preclusive effect under Michigan law of alternative claims for relief when the judgment is a general judgment only. *See, e.g.*, *McCurdie v. Strozewski* (*In re Strozewski*), 458 B.R. 397, 405-07 (Bankr. W.D. Mich. 2011); *Kasishke v. Frank* (*In re Frank*), 425 B.R. 435, 440-42 (Bankr. W.D. Mich. 2010). The Panel, however, need not decide whether the Michigan Supreme Court would follow the Second Restatement of Judgments or revert to the view expressed in the First

Restatement of Judgments even though the Michigan Supreme Court has cited with approval to other portions of § 27 in the Second Restatement. *See Lichon*, 459 N.W.2d *at* 298-99 (comment e); *Gates*, 452 N.W.2d at 631 (comment h); *Qualls*, 454 N.W.2d at 382. Rather, the Panel agrees with the bankruptcy court that the record before the state court can lead to but one conclusion, that the state court judgment of $42,706.10 was based on Plaintiffs' claim for treble damages for statutory conversion under Michigan Compiled Laws § 600.2919a. *See also* Restatement (Second) of Judgments § 27 cmt. f ("If it cannot be determined from the pleadings and other materials of record in the prior action what issues, if any, were litigated and determined by the verdict and judgment, extrinsic evidence is admissible to aid in such a determination."). Accordingly, the bankruptcy court correctly deduced from the record before it that the state court judgment was based on Plaintiffs' claim for statutory conversion.

The Michigan conversion statute, Michigan Compiled Laws § 600.2919a, provides in pertinent part:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> > (a) Another person's stealing or embezzling property or converting property to the other person's own use.
> >
> > (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

Mich. Comp. Laws § 600.2919a(1)(a)-(b). Michigan Complied Laws § 600.2919a was amended in 2005. Prior to that time, the behavior described in subsection (b) was the only basis for "statutory conversion." As a result, treble damages were only available when a third party had acquired the converted property. In 2005, "[t]he Legislature added 600.2919a(1)(a) so that a plaintiff could receive treble damages from the actual thief himself." *Joy & Middlebelt Sunoco, Inc. v. Fusion Oil, Inc.*, 2008 WL 283767, at *2, n.2 (E.D. Mich. Jan. 31, 2008) (citation omitted). In the present case, the factual allegations in the state court complaint suggest that the state court judgment was based on § 600.2919a(1)(a), as opposed to § 600.2919a(1)(b). Conversion under § 600.2919a(1)(b) does

not apply to the person who committed conversion. Instead, it "applies only to *other* persons, who buy, receive, possess, conceal, or aid in the concealment of stolen, embezzled, or converted property, with knowledge that the property was stolen, embezzled, or converted." *In re Pixley*, 456 B.R. at 786.

"The Michigan conversion statute does not define the word 'converting' or itself give elements for a conversion claim. Those are supplied by Michigan common law. The Michigan Supreme Court defines conversion as 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.' " *In re Pixley*, 456 B.R. at 787-88 (quoting *Dep't of Agric. v. Appletree Mktg., L.L.C.*,779 N.W.2d 237, 244 (Mich. 2010); *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992)). " 'Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party.' " *In re Pixley*, 456 B.R. at 788 (quoting *Appletree Mktg., L.L.C.*, 779 N.W.2d at 244-45). No intent to violate the property rights of another, or knowledge that another's property rights are being violated, is required. *In re Pixley*, 456 B.R. at 788 (citing Michigan case law). The tort can be committed "unwittingly." *See Foremost Ins. Co.*, 486 N.W.2d. at 606. " '[N]either good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action.' " *In re Pixley*, 456 B.R. at 788 (quoting *J. Franklin Interests, L.L.C. v. Meng*, Docket No. 296525, 2011 WL 4501841, at *9 (Mich. Ct. App. Sept. 29, 2011)).

Pursuant to § 523(a)(4), a Chapter 7 discharge will not discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Although Plaintiffs alleged that Debtor's actions rose to the level of fraud, embezzlement and/or larceny, the bankruptcy court concluded that Debtor's actions constituted only embezzlement. On appeal, Plaintiffs have not challenged the bankruptcy court's determination that the other types of nondischargeability under § 523(a)(4) – defalcation and larceny – are inappropriate for summary judgment. Therefore, the Panel will not address the elements for nondischargeability under § 523(a)(4) for defalcation or larceny.

Federal law defines "embezzlement" under section 523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.

*Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172-73 (6th Cir. 1996) (citations and internal quotation marks omitted). Thus, Plaintiffs must show (1) they entrusted property to Debtor; (2) Debtor appropriated the property for a use other than that for which it was entrusted, and (3) the circumstances indicate fraud or deceit. *See id.*

In the case currently on appeal, the bankruptcy court noted that conversion and embezzlement are similar. Because the allegations in the Complaint, which were deemed admitted, established conversion and described circumstances indicating fraud, the bankruptcy court concluded that Debtor's actions constituted embezzlement. The Panel agrees with the bankruptcy court's conclusion that the Michigan judgment for statutory conversion establishes the first two elements for embezzlement: (1) Plaintiffs entrusted property to Debtor, and (2) Debtor appropriated the property for a use other than that for which it was entrusted. *See In re Brady*, 101 F.3d at 1173. The bankruptcy court erred, however, when it concluded that the allegations in the complaintdescribing circumstances indicating fraud – the third element for nondischargeability under the embezzlement portion of § 523(a)(4) – were also a necessary element for statutory conversion under Michigan law. As noted above, statutory conversion under Michigan Compiled Laws § 600.2919a does not require circumstances indicating fraud. Section 600.2919a(a) defines statutory conversion as "[a]nother person's stealing or embezzling property *or* converting property to the other person's own use" (emphasis added).

Allegations of fraud, even if deemed admitted based on a defendant's default, cannot be "necessarily determined" for purposes of issue preclusion if they were not an essential element for a finding of statutory conversion. *See In re Markowitz*, 190 F.3d at 462 (in holding that the state court jury's finding of legal malpractice did not decide issue of "willful and malicious injury" under § 523(a)(6), the Sixth Circuit noted that the state court recognized a requested special interrogatory on the question of willful and malicious injury "was neither necessary nor essential to [the state court] judgment"); *In re Pixley*, 456 B.R. at 787-89 (allegations in state court complaint that injury

to plaintiff was "willful" within the meaning of § 523(a)(6) were not "necessary to" or "essential to" support" judgment for statutory conversion under Michigan law). And since Michigan law does not require circumstances of fraud for statutory conversion under Michigan Compiled Laws § 600.2919a(a), the state court judgment cannot have issue preclusive effect as to the third element of nondischargeability for embezzlement under § 523(a)(4). Therefore, the bankruptcy court erred when it granted summary judgment for Plaintiffs based on the issue preclusive effect of the prior state court judgment.

## V. CONCLUSION

The Panel concludes that the bankruptcy court erred when it held that the issue of fraud was "necessarily determined" by the state court. Accordingly, the state court judgment cannot have issue preclusive effect as to this element for nondischargeability under the embezzlement portion of § 523(a)(4). The bankruptcy court's order granting summary judgment to Plaintiffs is reversed, and the matter is remanded to the bankruptcy court for further proceedings consistent with this opinion.