NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-12-1542-TaDKi |
| ERKAN EREREN and AYLIN EREREN, | Bk. No.   10-bk-22580-CB |
| Debtors. | Adv. No.  10-ap-01600-CB |
| ERKAN EREREN; AYLIN EREREN, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| RICHARD A. MARSHACK, Chapter 7 Trustee; UNITED STATES TRUSTEE, | |
| Appellees. | |

Argued and Submitted on May 15, 2013
at Pasadena, California

Filed – May 28, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Catherine E. Bauer, Bankruptcy Judge, Presiding

Appearances:   Michael Harvey Raichelson of the Law Offices of Michael H. Raichelson argued on behalf of Appellants; Melissa Davis Lowe of Shulman Hodges & Bastian LLP argued on behalf of Appellee Richard A. Marshack, Chapter 7 Trustee.

Before:   TAYLOR, DUNN, and KIRSCHER, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Debtors Erkan Ereren ("Mr. Ereren") and Aylin Ereren ("Mrs. Ereren" and jointly, "Debtors") appeal from the bankruptcy court's judgment denying their chapter 7 discharge pursuant to § 727(a)(2), (a)(4), and (a)(5)[1] and its order on findings of fact and conclusions of law following trial. We AFFIRM the bankruptcy court's denial of discharge under § 727(a)(2) and (a)(4).

**FACTS**

***Pre-Bankruptcy***

The Debtors are a married couple and immigrants from Turkey. Mr. Ereren is a surgeon, but in 1996 he was injured in a ski accident that left him permanently disabled. In addition to $800 in monthly gross income, Mr. Ereren receives approximately $14,400 per month in disability payments.

In January 2008, Mr. Ereren obtained $3,000,000 in "markers" from MGM Grand Hotel, LLC ("MGM") in Las Vegas and in approximately 24 hours suffered substantial losses. MGM subsequently sued Mr. Ereren in Nevada state court to collect on his gambling debt. On January 28, 2010, it obtained a judgment against Mr. Ereren in the amount of $2,379,350. On March 9, 2010, MGM obtained a "sister-state" judgment against Mr. Ereren in California in the amount of $3,317,625.66.

At the time of the domestication of judgment, the Debtors

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

owned two Mercedes-Benzes (the "Vehicles"). On March 16, 2010, however, Mr. Ereren traded-in the Vehicles at a Mercedes-Benz dealership and received $59,000 in proceeds. Mr. Ereren then entered into leases for two 2010 Mercedes-Benzes.

MGM began to further ratchet up its collection efforts against Mr. Ereren during the summer of 2010. On June 16, 2010, it obtained a Writ of Execution on the sister-state judgment in California state court, and a Notice of Levy was issued by the Orange County Sheriff. MGM also conducted two judgment debtor examinations of Mr. Ereren, and, on August 23, 2010, it obtained an order for a judgment debtor examination of Mrs. Ereren.

On July 26 and July 27, 2010, and while collection efforts intensified, Mrs. Ereren made two[2] transfers of funds in the total amount of $178,681 (the "Funds") to her brother Huseyin Chait Berk ("Berk"). Berk lives in Turkey.

### Chapter 7 Filing and the Adversary Proceeding

On September 7, 2010, the Debtors filed a voluntary chapter 7 bankruptcy petition. Richard A. Marshack was appointed as the chapter 7 trustee ("Trustee").

After two § 341(a) meetings of creditors, the Trustee filed an adversary complaint objecting to the Debtors' discharge under § 727(a)(2), (a)(4), and (a)(5). The complaint alleged that the Debtors transferred the Funds and the Vehicles with the intent to

---

[2] The first transfer was made on July 26, 2010 in the amount of $87,000 and the second transfer was made the following day in the amount of $91,681.

3

hinder, delay, or defraud their creditors;[3] that they knowingly and fraudulently omitted the transfer of the Vehicles from their statement of financial affairs ("SOFA"); and that they failed to satisfactorily explain the loss or deficiency of the assets to meet the Debtors' liabilities.

The bankruptcy court scheduled a trial for September 4, 2012. In advance of trial, the Debtors each filed a declaration in lieu of direct trial testimony.

Mr. Ereren declared that between 2003 and 2004, his father (who lived in Turkey) became ill. Between the latter half of 2004 until the elder Ereren's death in January 2005, Mr. Ereren allegedly borrowed approximately $157,500 from Berk to pay for the elder Ereren's medical bills, expenses, and funeral in Turkey. Mr. Ereren stated that based on Berk's request, in January 2005, Mrs. Ereren and he executed a promissory note in favor of Berk ("Berk Note"), evidencing their promise to repay the money loaned by Berk. He stated that the total amount owed under the Berk Note was $178,681 and that it matured on or before August 1, 2010.

Mr. Ereren further declared that he did not learn of the MGM sister-state judgment until late March/early April 2010 and that he disclosed to MGM his trade-in of the Vehicles during his judgment debtor examination. Mr. Ereren stated that the Debtors did not believe they were required to list the trade-in of the Vehicles on their SOFA, as it was Mr. Ereren's regular practice

---

[3] Although the Trustee does not specifically identify the creditors, it appears that, at a minimum, he refers to MGM.

to upgrade the couple's cars every four to five years, which the Debtors disclosed to their bankruptcy counsel.[4] Finally, Mr. Ereren declared that bankruptcy counsel advised the Debtors as to the possible preference issue and attempted to recover the Funds from Berk, but to no avail.

Mrs. Ereren declared that she was not involved in the couple's financial affairs. She stated that she traveled to Turkey during the summer of 2010, where Berk continuously demanded payment on the note. Consequently, she stated that she merely paid the Berk Note when she transferred the Funds.

Both of the Debtors further testified at the September 2012 trial. Mr. Ereren testified on cross-examination that the Debtors paid the Berk Note based on moral and cultural reasons. On her cross-examination, Mrs. Ereren testified that she unsuccessfully requested an extension from her brother and advised her husband of her intent to transfer the Funds. She stated that while she knew that her husband gambled, she was not aware of the extent of his losses or the MGM judgments. At the conclusion of trial, the bankruptcy court took the matter under submission.

The bankruptcy court subsequently entered its judgment ("Judgment") denying the Debtors' discharge under § 727(a)(2), (a)(4), and (a)(5). The Judgment was brief, but included an express statement that the bankruptcy court did not find the Debtors credible.

---

[4] The Debtors were represented by different counsel in filing their chapter 7 bankruptcy petition.

The Trustee moved for findings of fact and conclusions of law under Civil Rule 52 and Rule 7052. He also requested that the bankruptcy court take judicial notice of certain documents in support of his opposition to the Debtors' independent motion under Civil Rule 52.[5]

On October 15, 2012, the bankruptcy court entered an order on its findings of fact and conclusions of law following trial ("Order on Findings of Facts and Conclusions of Law").[6] In doing so, the bankruptcy court adopted the Trustee's proposed findings of fact, as well as his proposed conclusions of law save two alterations.

The Debtors timely appealed from the Judgment and Order on Findings of Facts and Conclusions of Law.[7]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C.

---

[5] The Debtors concurrently moved to alter or amend the findings of fact and conclusions of law under Civil Rule 52, for a new trial under Civil Rule 59, and to amend the Judgment under Civil Rule 59. As discussed in note 6, infra, the bankruptcy court did not rule on their motion.

[6] After entering the Order, it appears that the bankruptcy court did not rule on the Debtors' motion or the Trustee's request for judicial notice. We do not consider the Debtors' requests relating to their motion, as issues as to the disposition of their motion are not before us in this appeal.

[7] While the Findings of Fact and Conclusions of Law as entered does not provide that it is an order, it was entered on the Trustee's motion under Civil Rule 52 and, thus, we treat it as an order. Under Rule 8002, the Trustee's motion tolled the time for appeal and, therefore, the Debtors' appeal of both the Judgment and Order is timely. See Fed. R. Bankr. P. 8002(b)(1).

6

§ 158.

**ISSUES**

1. Did the bankruptcy court err in denying the Debtors' discharge under § 727(a)(2)?

2. Did the bankruptcy court err in denying the Debtors' discharge under § 727(a)(4)?

**STANDARD OF REVIEW**

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004) (citation omitted), aff'd, 212 Fed. Appx. 589 (9th Cir. 2006).

Factual findings are clearly erroneous if illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (citation omitted). We give great deference to the bankruptcy court's findings when they are based on its determinations as to the credibility of witnesses. Id. (noting that as the trier of fact, the bankruptcy court has "the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.") (citation and quotation marks omitted). Where there are two permissible views of the evidence, the bankruptcy court's choice between them cannot be clearly erroneous. Ng v. Farmer (In re Ng), 477 B.R. 118, 132 (9th Cir. BAP 2012) (citation omitted). We may affirm

7

on any basis in the record. See Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC), 481 B.R. 34, 44 (9th Cir. BAP 2012).

Notwithstanding, when the bankruptcy court adopts proposed findings of fact and conclusions of law, we review its decision with special scrutiny in determining whether its findings were clearly erroneous. See Alcock v. Small Bus. Admin. (In re Alcock), 50 F.3d 1456, 1459 n.2 (9th Cir. 1995) ("Findings of fact prepared by counsel and adopted by the trial court are subject to greater scrutiny than those authored by the trial judge."); see also Anderson v. City of Bessemer City, 470 U.S. 564, 572 (1985).

**DISCUSSION**

In general, the bankruptcy court must grant a discharge to an individual chapter 7 debtor unless one of the twelve enumerated grounds in § 727(a) is satisfied. In the spirit of the "fresh start" principles that the Bankruptcy Code embodies, claims for denial of discharge are liberally construed in favor of the debtor and against the objector to discharge. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009) (citation omitted). The objector to discharge bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied under an enumerated ground of § 727(a). Id. (citation omitted).

**A.  Preliminary Matters**

**1.  Joint Pre-Trial Order**

Prior to trial, the parties apparently entered into a joint

8

pre-trial order ("JPTO"), which narrowed the disputed issues of law and fact for trial. In his opening brief, the Trustee identifies an additional issue on appeal; namely, whether certain issues of law and fact not identified in the JPTO should have been litigated at the trial, specifically with respect to the § 727(a)(5) claim. The Trustee did not file a cross-appeal and, thus, is not a cross-appellant on appeal.

The Debtors object and contend that the JPTO is not part of the record because it was not entered by the bankruptcy court. They, in turn, reference their opposition to the Trustee's request for judicial notice before the bankruptcy court; in that opposition, the Debtors argued that judicial notice of the JPTO was improper because the parties submitted the proposed order nine months before trial, and the Debtors subsequently requested changes to the JPTO before trial, which were never addressed.

The Trustee is not a cross-appellant and cannot present additional issues on appeal. See Fed. R. Bankr. P. 8006; Leavitt v. Alexander (In re Alexander), 472 B.R. 815, 824 (9th Cir. BAP 2012). Further, as discussed below, we take no position on the § 727(a)(5) ruling. Consequently, we do not consider the JPTO in this appeal.

**2. Statutory Basis for Denial of Discharge**

The adversary complaint sought denial of discharge under, among other grounds, § 727(a)(2) and (a)(4). Based on the briefs and the record on appeal, we assume that the precise denial of discharge was under § 727(a)(2)(A) and (a)(4)(A).

///

///

9

**B.   The bankruptcy court did not err in denying the discharge under § 727(a)(2)(A).**

Section 727(a)(2)(A) provides that the bankruptcy court may deny a debtor's discharge if the debtor disposed of or permitted the disposal of his or her property, with the intent to hinder, delay, or defraud a creditor or an officer of the estate, within one year prior to the date of petition.  The objector to discharge under § 727(a)(2)(A) must prove two things: (1) a disposition of property, whether by transfer, removal, destruction, mutilation, or concealment (within the statutory time period); and (2) the debtor's subjective intent to hinder, delay or defraud a creditor through the act of disposing of the property.  In re Retz, 606 F.3d 1189, 1200 (9th Cir. 2010) (citation and quotation marks omitted).

The bankruptcy court denied discharge under § 727(a)(2)(A) based on the prepetition disposition of the Funds and the Vehicles.  The Debtors do not contest that the Funds and the Vehicles were their property prior to filing bankruptcy.  They also cannot contest that Mrs. Ereren transferred the Funds and that Mr. Ereren traded-in the Vehicles within the statutory prepetition time period.  Therefore, our review focuses on the Debtors' intent to hinder, delay, or defraud a creditor.

The intent to hinder, delay, or defraud "is a question of fact that requires the trier of fact to delve into the mind of the debtor and may be inferred from surrounding circumstances."  In re Searles, 317 B.R. at 379 (citation omitted).  Similarly, the debtor's "course of conduct may be probative of the question."  Id. at 380 (citation omitted).  The basis of intent

10

is disjunctive and, thus, a finding of intent to hinder or delay or defraud is sufficient to deny discharge under § 727(a)(2). In re Retz, 606 F.3d at 1200 (citation omitted).

On appeal, the Debtors argue that the Trustee failed to meet his burden of showing that the Debtors intended to hinder, delay, or defraud. The Debtors contest the bankruptcy court's finding as to Mrs. Ereren's knowledge of her husband's gambling problem and the MGM judgments at the time that she transferred the Funds. They reiterate that Mrs. Ereren transferred the Funds as payment on the Berk Note and that the Debtors regularly upgraded their cars every four to five years. Thus, the Debtors argue that the bankruptcy court erred in finding that one or both of the Debtors intended to hinder, delay, or defraud a creditor. At oral argument, the Debtors further emphasized that the Order on Findings of Fact and Conclusions of Law failed to contain a finding as to Mrs. Ereren's intent to hinder, delay, or defraud.

The Trustee asserts that he introduced significant evidence at trial from which the bankruptcy court inferred the Debtors' intent. He cites to evidence such as MGM's collection efforts prior to the transfers; the Debtors' failure to present adequate evidence of consideration for the Funds transfer; the fact that Berk was an insider; Mrs. Ereren's testimony that she was aware of Mr. Ereren's gambling problem; and the fact that Mr. Ereren did not make his settlement offer to MGM until after the transfers.

The bankruptcy court generally determined that the Debtors'

11

testimony was not credible.[8]  It affirmatively found that Mr. Ereren knew that his wife intended to transfer the Funds, but did nothing to dissuade her and that Mrs. Ereren knew that her husband had a gambling problem, at least at the time that she transferred the Funds.  The bankruptcy court did not make additional express findings as to the Debtors' states of mind when they transferred the Funds or the Vehicles.  But based on the evidence before it, the bankruptcy court ultimately determined that the Debtors intended to hinder, delay, or defraud a creditor(s) in making these transfers.

In so determining, the bankruptcy court necessarily disregarded the Debtors' explanations that their disposition of the Funds or the Vehicles were neutral decisions.  That is, it did not believe that Mr. Ereren traded in the Vehicles in March

---

[8] This finding is contained in the Judgment and it is the sole finding made by the bankruptcy court in the Judgment.  Civil Rule 58, incorporated into adversary proceedings by Rule 7058, provides that every judgment must be set in a separate document. Fed. R. Civ. P. 58(a).  This Panel has stated that "[a] separate document means one that is separate from an opinion, memorandum, or findings of the court."  Boggan v. Hoff Ford, Inc. (In re Boggan), 251 B.R. 95, 98 n.2 (9th Cir. BAP 2000) (construing a former version of Rule 9021(a), which was amended in 2009 in connection with the addition of Rule 7058).  The separate document rule, however, is intended to calculate the time for an appeal; it is not jurisdictional and may be waived. Id.  Civil Rule 58 was recently amended to provide that if a separate document is required, the judgment is deemed entered when a separate document is entered or 150 days from entry of the order or opinion on the docket, whichever is earlier.  Fed. R. Civ. P. 58(c)(2).
Neither party raises this issue on appeal.  To the extent the Judgment contained one finding, the 150-days expired on February 3, 2013.  Thus, the Judgment does not violate the separate document rule for the purposes of this appeal.

2010 simply because it was his regular practice to do so.  To the extent the bankruptcy court did or did not believe that there was a valid obligation owed to Berk, on which we do not opine, it did not believe that Mrs. Ereren transferred the Funds simply because the Berk Note was set to mature or even solely because of social or cultural reasons.  The bankruptcy court's findings and determinations are supported by the record, which reveals that the transactions conspicuously followed the MGM judgment, roughly coincided with MGM's domestication of its judgment in California and its acceleration of its collection efforts against Mr. Ereren, and preceded a settlement offer to MGM.

As the Debtors asserted at oral argument, minor discord exists between the Judgment and the Order on Findings of Fact and Conclusions of Law with respect to Mrs. Ereren's intent under § 727(a)(2)(A).  Specifically, the Order does not contain an express finding as to Mrs. Ereren's intent to hinder, delay, or defraud a creditor under § 727(a)(2)(A).  Rather, the bankruptcy court concluded that Mr. Ereren, with the intent to hinder, delay, or defraud, allowed his wife to transfer the Funds.  This lack of precision, however, is of no moment under these circumstances.  The Judgment provides for denial of discharge under § 727(a)(2) against both of the Debtors.  Further, even if there was a valid obligation to Berk, the timing and circumstances of Mrs. Ereren's transfer were such that it warranted an inference of intent to hinder, delay, or defraud MGM.  The Debtors repeatedly represented that Mrs. Ereren had minimal involvement in the Debtors' finances leading up to the date of the petition; yet, she caused the transfer of a

13

significant amount of money, roughly congruent with MGM's increasing efforts to collect on its judgment. Thus, the record supports the bankruptcy court's ultimate conclusion as to Mrs. Ereren notwithstanding the absence of an express finding.[9] See In re Caviata Attached Homes, LLC, 481 B.R. at 44 (we may affirm on any basis in the record).

The Debtors suggest that, at worst, the transfer of the Funds was a preference to Berk. Preference of one creditor does not *per se* result in a finding of intent to hinder, delay, or defraud another creditor. See Murphey v. Crater (In re Crater), 286 B.R. 756, 761-62 (Bankr. D. Ariz. 2002) (collecting cases); see also Foxmeyer Drug Co. v. Gen. Elec. Capital Corp. (In re Foxmeyer Corp.), 296 B.R. 327, 337 (Bankr. D. Del. 2003) (collecting cases). But a debtor's preference of one creditor does not preclude a finding of intent to hinder, delay, or defraud his or her other creditors. See Cox v. Villani (In re Villani), 478 B.R. 51, 61 (1st Cir. BAP 2012); Warchol v. Barry (In re Barry), 451 B.R. 654, 662 (1st Cir. BAP 2011). Thus, a debtor's alternative motivations for the disposition of property are irrelevant when the debtor harbors an intent to hinder, delay, or defraud another creditor. First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986). Here, once again, Mrs. Ereren's transfer of the Funds (coupled with the timing of MGM's collection efforts) provide a strong

---

[9] Even if the record did not support denial of discharge under § 727(a)(2) as to Mrs. Ereren, as discussed in section C, the Panel affirms the denial of discharge under § 727(a)(4) as to both Debtors.

14

inference as to her intent to hinder, delay, or defraud a creditor. Thus, whether the transfer of the Funds was also a preference is essentially irrelevant.

On this record, the bankruptcy court's findings are not illogical, implausible, or without support from the record.[10] It did not err in finding that both of the Debtors intended to hinder, delay, or defraud a creditor, namely, MGM. See In re Searles, 317 B.R. at 379-80 (bankruptcy court may infer intent by the surrounding circumstances, including a debtor's course of conduct). It found that the Debtors' testimony was not credible, which we accord great deference. See In re Retz, 606 F.3d at 1203-04. And where there are two permissible views of the evidence, the bankruptcy court's choice between them cannot be clearly erroneous. See In re Ng, 477 B.R. at 132. Therefore, the bankruptcy court did not err in denying the Debtors' discharge under § 727(a)(2)(A).

**C. The bankruptcy court did not err in denying the discharge under § 727(a)(4)(A).**

To obtain a denial of discharge under § 727(a)(4)(A), the

---

[10] At oral argument, the Debtors also raised an issue as to the form of the Order on Findings of Fact and Conclusions of Law, asserting, among other things, that the bankruptcy court's findings on intent were contained under its conclusions of law. It is unfortunate that the bankruptcy court adopted (essentially verbatim) the Trustee's proposed findings of fact and conclusions of law, which contained this inaccuracy. It is also unfortunate that the bankruptcy court's sole alterations to the proposed findings of fact and conclusions of law was with respect to Mrs. Ereren's intent under § 727(a)(2)(A), creating a facial ambiguity. Nonetheless, these are distinctions without a difference and, thus, of no moment to this appeal.

15

objector must show that: (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. In re Retz, 606 F.3d at 1197 (citation omitted). A false statement or omission in the debtor's schedules or statement of financial affairs may constitute a false oath for the purposes of § 727(a)(4)(A). In re Khalil, 379 B.R. at 172; Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. BAP 1999).

The Debtors argue that they were only required to disclose transactions outside of the ordinary course of their financial affairs. They contend that because upgrading their cars (by trading-in or selling) every four to five years was in the ordinary course of their financial affairs, their omission of the trade-in on their SOFA did not constitute a false oath. By failing to determine whether the transfer was outside the course of their ordinary financial affairs, the Debtors argue that the bankruptcy court erred in finding that there was an omission on their SOFA.

The bankruptcy court did not make express findings as to whether the trade-in was in the ordinary course of the Debtors' financial affairs. Compare Tow v. Henley (In re Henley), 480 B.R. 708, 766-67 (Bankr. S.D. Tex. 2012) (debtors improperly omitted on SOFA the sales of assets at garage sales), with Maxfield v. Jennings (In re Jennings), 349 B.R. 897, 913 (Bankr. M.D. Fla. 2006) (debtor's omission on his SOFA of the sale of his boat was material, but not false when debtor understood the sale to be in the ordinary course of his affairs). Nonetheless, the

16

bankruptcy court broadly determined that the Debtors' testimony was not credible. And given its ultimate conclusion, the bankruptcy court necessarily disregarded the Debtors' explanation that the transfer of the Vehicles was in the ordinary course of their financial affairs. The record supports this conclusion.

The Debtors next argue that the Trustee failed to prove that the Vehicles sales hindered or impeded the administration of the bankruptcy estate and, thus, failed to prove that the false oath was material. Whether a fact is material is broadly defined: "[a] fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." In re Khalil, 379 B.R. at 173 (citation omitted). The bankruptcy court concluded that the omission was material. It is undisputed that the Vehicles previously belonged to the Debtors and that they obtained $59,000 from the sale. This information clearly related to the existence and disposition of significant assets. See id. Thus, the record supports the bankruptcy court's conclusion that the Debtors' omission was material.

The Debtors further contest that they acted knowingly or fraudulently. At oral argument, the Debtors emphasized that they did not act knowingly or fraudulently because "everyone" knew about the transfer of the Vehicles. That is, they disclosed the transfer to MGM during Mr. Ereren's judgment debtor examinations, to their bankruptcy counsel at the time of filing, and to the Trustee during their § 341(a) meeting of creditors.

A debtor "acts knowingly if he or she acts deliberately and

17

consciously." In re Retz, 606 F.3d at 1198 (citation and quotation marks omitted). A debtor's intent to hinder, delay, or defraud under § 727(a)(2) may be probative of the "knowing and fraudulent" elements under § 727(a)(4)(A). Palmer v. Downey (In re Downey), 242 B.R. 5, 14 n.10 (Bankr. D. Idaho 1999) (citation omitted).

The bankruptcy court found a knowing failure to disclose. Its finding is supported by the record. Once again, the bankruptcy court broadly determined that the Debtors' testimony was not credible. In so finding, the bankruptcy court implicitly declared that it did not find the Debtors' explanations for their omission believable.

Moreover, the fundamental purpose of § 727(a)(4)(A) is to incentivize a debtor to provide the trustee and creditors with accurate information so that they do not need to conduct costly investigations. In re Wills, 243 B.R. at 63 (citation omitted). As a result, whether MGM was aware of the transfer through a separate, nonbankruptcy proceeding is irrelevant. Similarly, the Debtors' apparent disclosure to the Trustee at their § 341(a) meeting of creditors is inadequate as a defense. See In re Searles, 317 B.R. at 377 (observing that in lieu of an amended schedule or statement, "[a]n unfiled letter to the trustee does not suffice because it is not in the plain view of all parties in interest who should be entitled to rely on the accuracy of the court's official file."); Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 732 (9th Cir. BAP 1999), aff'd, 5 Fed. Appx. 743 (9th Cir. 2001) (debtor who omits assets from schedules and statements and then "repents" at or before the

18

§ 341(a) meeting of creditors "pits the fundamental fresh start purpose of the [Bankruptcy] Code . . . against the clean hands maxim." (citation and quotation marks omitted). Thus, the record supports the bankruptcy court's finding that the Debtors' omission was knowingly made.

Finally, the Debtors argue that the bankruptcy court erred in finding that they fraudulently omitted the transfer. They assert that its finding is illogical given that they disclosed the vehicle sales to their biggest creditor and to the Trustee. They also assert that they disclosed the new car leases on their bankruptcy schedules. The Debtors further contend that they disclosed the transfer to bankruptcy counsel, which negates any intent to defraud.

A debtor acts with fraudulent intent when: (1) the debtor makes a misrepresentation; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors. In re Retz, 606 F.3d at 1198-99 (citation omitted). Fraudulent intent is typically proven by circumstantial evidence or by inferences drawn from the debtor's conduct. Id. at 1199 (citation omitted). Circumstantial evidence may include showing a reckless indifference or disregard for the truth. Id. (citation omitted); In re Wills, 243 B.R. at 64 (citation omitted); In re Downey, 242 B.R. at 14 n.10. A debtor, however, may prove lack of intent by demonstrating good faith reliance on his or her attorney's advice. In re Retz, 606 F.3d at 1199 (citation omitted).

The bankruptcy court found that the Debtors fraudulently omitted the transfer of the Vehicles. The record supports its

19

finding. Once again, the bankruptcy court broadly determined that the Debtors' testimony was not credible. It, thus, implicitly found that the quality of the Debtors' disclosures to the various parties did not negate fraudulent intent. This was reasonable; given the § 727(a)(2)(A) determinations, it is clear that the bankruptcy court did not believe that the transfer was an ordinary course transaction. This finding also renders an attorneys' advice regarding disclosure of ordinary course transactions irrelevant.

The bankruptcy court was also reasonable in failing to equate disclosure of the new car leases in the Debtors' schedules with disclosure of the prior sale yielding substantial cash proceeds. The bankruptcy court's finding of the Debtors' intent to hinder, delay, or defraud MGM under § 727(a)(2)(A), thus, also supports its finding of fraudulent intent under § 727(a)(4)(A). See In re Downey, 242 B.R. at 14 n.10. On this record, there are sufficient patterns of falsities or reckless indifference to the truth on the Debtors' part to support the bankruptcy court's determinations. Thus, the record supports the bankruptcy court's finding that the Debtors' omission was fraudulently made.

Although the Debtors assert that they disclosed the transfer to bankruptcy counsel such that it negates intent, they provided no additional evidence – by way of declaration from the attorney who filed the chapter 7 petition, for example – other than their testimonial evidence. The record supports the bankruptcy court's apparent conclusion that the Debtors did not establish that they relied on counsel's advice when they failed to disclose the transfer or that their reliance on counsel's advice, if any, was

20

reasonable or made in good faith.  See In re Retz, 606 F.3d at 1199 (citation omitted).

In sum, the bankruptcy court did not err in finding that the Debtors made a false omission on their SOFA, that their omission related to a material fact, and that they omitted the information knowingly and fraudulently.  The bankruptcy court's findings were not illogical, implausible, or without support in the record. Again, we give abundant deference to the bankruptcy court's findings based on its assessment of the Debtors' credibility at trial.  See id. at 1203-04.  And, again, where there are two permissible views of the evidence, the bankruptcy court's choice between them cannot be clearly erroneous.  See In re Ng, 477 B.R. at 132.  Therefore, the bankruptcy court did not err in denying the Debtors' discharge under § 727(a)(4)(A).[11]

**CONCLUSION**

Based on the foregoing, we AFFIRM the bankruptcy court's denial of discharge under § 727(a)(2) and (a)(4).

---

[11] Because we affirm under § 727(a)(2)(A) and (a)(4)(A), we decline to address the denial of discharge under § 727(a)(5).

21